---

(72 Misc. Rep. 566.)

## In re MEYER.

(Surrogate's Court, New York County. May, 1911.)

1. WILLS (§ 215*)—SURROGATE'S COURT—CONSTRUCTION OF CODICIL—APPOINT-MENT OF GUARDIAN.

> Code Civ. Proc. § 2624, providing that, if a party put in issue before the surrogate the validity, construction, or effect of any disposition of property in a will, the surrogate must determine the question, only authorizes him to construe a testamentary document as to the disposition of property, so that he has no power to determine that an appointment of a guardian for decedent's child in the codicil was void, and not dispositive.

> [Ed. Note.—For other cases, see Wills, Dec. Dig. § 215.*]

2. ESTOPPEL (§ 68*)—JUDICIAL PROCEEDINGS—INCONSISTENT CONTENTIONS.

> Where respondent in a probate proceeding claimed that a codicil appointing a guardian for administratrix's child was not dispositive and was void, in order to have the appointing provision thereof stricken, he cannot claim that the Surrogate's Court has power to construe the legality of such provision because he has attempted to put the construction of the will in issue under a statute which only gives it power of construction as to the disposition of property; consistency in contentions being necessary.

> [Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 68.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 224*)—PROBATE—MOTION TO EXPUNGE—TIME.

A motion to expunge alleged scandalous matter from a codicil may be made at any time before decree of probate if it can be entertained.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 224.*]

4. WILLS (§ 224*)—PROBATE—EXPUNGING MATTER—POWER OF SURROGATE'S COURT.

A Surrogate's Court has no power to expunge matter from an original will or codicil offered for probate, on the ground that it is scandalous, or otherwise.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 224.*]

5. COURTS (§ 198*)—SURROGATE'S COURTS—POWERS.

The powers of the Surrogate's Courts are judicial, administrative, and inquisitorial, each of such powers being distinct and statutory.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 198.*]

6. WILLS (§ 76*)—PROBATE—GROUNDS FOR REFUSAL—NONDISPOSITIVE DOCUMENTS.

A testamentary paper should not be refused probate because it is not wholly dispositive, since, for example, a will appointing a guardian as authorized by statute may be probated.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 76.*]

7. COURTS (§ 91*)—PRECEDENTS.

A trial court must give effect even to the implications contained in the decisions of a superior court of its own jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 326; Dec. Dig. § 91.*]

8. WILLS (§ 300*)—PROBATE—GROUNDS FOR REFUSAL—NONDISPOSITIVE DOCUMENTS.

Where papers propounded for probate raise the presumption that they were executed in good faith as a will and codicil, they should not be refused probate because of external suggestions that they were not intended to operate as a last will.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 300.*]

9. WILLS (§ 206*)—EXPUNGING SCANDALOUS MATTER.

Even if the surrogate has power to refuse probate to a will because it contains scandalous matter, such power should be sparingly used.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 206.*]

In the matter of Rose Edna Meyer. On motion in a probate proceeding to have an appointment of a guardian in the codicil declared void, and certain matters stricken therefrom as scandalous. Motion denied.

Harry Robitzek (Ernest Hall, of counsel), for proponents.
Jacob H. Coen, for respondent.

FOWLER, S. The respondent appears in a proceeding for probate and asks (1) that an appointment by the testatrix of a guardian for her child (contained in a codicil to her will) be construed as null and void and not dispositive; and (2) that certain matter complained of be struck out of the codicil as scandalous, scurrilous, improper, and not dispositive.

[1] In respect of the first request to the surrogate, to construe a testamentary appointment of guardian out of the codicil, it must be apparent that the surrogate has no such power. The surrogate's power

to construe a testamentary instrument in the course of a proceeding to probate is by the terms of the act (section 2624, Code Civ. Proc.) confined to a disposition of property, and then can be exercised only provided probate is decreed.

The suggestion that the legality of the nomination of the guardian by testatrix for her child is before the surrogate because the respondent attempts to put in issue the construction of the will under section 2624 of the Code of Civil Procedure cannot be entertained for an instant. Such a power of construction relates only to a disposition of property, and this instrument which the respondent wishes considered the same respondent claims is not testamentary because it is not a disposition of property.

[2] He has excluded himself from an invocation of that section by the force of his contention that the codicil is not a disposition of property. Some consistency is necessary to the validity of legal positions.

[3] But the motion to expunge matter alleged to be scandalous and improper from the codicil is on another foot, and such a motion may well be made at any time before the decree of probate passes, if it can be entertained at all. It will be observed that the motion here is to strike the alleged offensive matter out of the original paper propounded as a codicil, and that it is not a motion to refuse probate and record of such matter. The power of the surrogates of this state to expunge matter from an original will in any case to my mind does not exist. It is true the paper is in court and the proceeding on it is in rem, or "quasi in rem," as is sometimes more accurately said. But the will and codicil are not to be kept always in court, and, after probate and copy in the register of record of wills, they are to be returned to the proponent or his representative in the usual course.

[4] There does not seem to be any express adjudication of a court in this state upon the surrogate's power to expunge matter from an original will or codicil brought into court for probate; but, on general principles, it would seem apparent that the surrogate possesses no such power as that invoked by the respondent. The codicil is not the property of the state. It is to be returned after record to a rightful claimant, and the power of courts over the documentary property of the citizens of the state is subject to established limitations. It does not extend by implication in any case to the destruction or mutilation of property intrusted to its care for well-defined purposes. It is for this reason that a testamentary paper brought into court should never be marked even for identification. The proceeding is on the paper, and, if probate is refused, the document is returned intact and unharmed.

A decision on a similar motion has come before the English courts. In the year 1846 the Prerogative Court refused to expunge from the original will matter described as atrocious and libelous, but excluded such matter from probate and from the copy kept in the register, stating that the court could not expunge matter from an original will (In the Goods of George Wartnaby, deceased, 4 Notes of Cas. in Ecc. Courts, 476), and there are earlier decisions reading to the same point

(Curtis v. Curtis, 3 Add. Ecc. Rep. 33). The principle of the decision in the Goods of Wartnaby seems to be sound. Consequently the respondent's motion, if it can be entertained at all, can only be regarded as a motion to refuse probate and record to the alleged offensive matter, and not as a motion to expunge matter from an original document.

The present motion, regarded as a motion to refuse probate and record to offensive matter, seems also in limine to involve the power of the surrogate. The precise extent of the powers of surrogates regarded as judicial officers of courts of record has never been exhaustively defined. Judicial power as incidental to the specific authority conferred upon him is to be inferred from the repeal in 1837 (chapter 460) of the excluding provision of the Revised Statutes to the effect that no surrogate should, under pretext of incidental power or constructive authority, exercise any jurisdiction whatever not expressly given by some statute of the state. 2 R. S. 220, 221, and note of revisers on chapter 2, pt. 3, R. S. That provision of the Revised Statutes was found so inconvenient as to necessitate its repeal. Where, then, did the repeal leave the jurisdiction of the surrogates, is the unsettled question. But, without attempting to express at this time any opinion on this obscure question, it is apparent from the statute itself that all the powers of the surrogates are not purely judicial. Some of such powers are purely administrative. The statute prescribes the records which the surrogate is to keep, and over those the powers of the surrogate as keeper of the records can hardly be regarded as more judicial than the similar powers of the county clerk or a register of deeds under the present system.

[5] It is to be observed that the powers of the surrogates in the present organization of the state are judicial, administrative, and inquisitorial. Every one of these powers is distinct. As a judicial officer, the surrogate's jurisdiction, but not the mode of its exercise or the principles of its construction, is prescribed by statute. As an administrative officer the surrogate's power and duties and the mode of their execution are wholly statutory. His inquisitorial power, very limited in extent, is also wholly statutory. This last power is not dissimilar to the former and highly responsible power of a notary or prothonotary. Indeed, all these offices are borrowed from the same ancient home, one in origin wholly foreign to the common law of this state, except in so far as that common law is held to embrace portions of the civil or canon law. The extensive jurisdiction of the surrogates as probate officers and the exercise of their powers as probate judges at the audience, or, in other words, on the trial of matters within their jurisdiction, are also very different things. It is generally conceded that such jurisdiction may be prescribed by statute, and yet that the exercise of the powers intrusted may be influenced, and are, as a fact, influenced, by precedents of courts from which their jurisdiction is borrowed. Brown on Jurisdiction (2d Ed.) 421. This is necessarily true whenever an ancient and borrowed jurisdiction is invested in a judicial officer in this state by statute or constitutional

reservation. The distinction noted is not always observed in practice, and its neglect gives rise occasionally to great inaccuracies of statement. Jurisdiction is the judicial authority dicere jus, but how the pronouncement is to be made is another matter. Sometimes it is regulated by practice acts, but in the absence of such regulation by the ancient precedents derived from the borrowed jurisdiction. Pomeroy's Municipal Law, 98, 99. Having reference to the outline of general principles just made, I confess that, if it were an original question, there would be to my mind some doubt whether the surrogates of this state are now invested with judicial powers over the records of wills to such an extent that they may even refuse to decree probate to any part of a testamentary paper held to be executed with due solemnities and in good faith propounded to them for probate. But as the general opinion is the other way, and there is a solitary judicial precedent for such action, I shall in this matter defer to such precedent, and not regard it as an open question. The precedent to which I refer purports to be based largely on a statement contained in the text of Redfield on Wills, doubtless a treatise of some weight in the courts of this country. Similar statements are adopted in Redfield's Surrogate's Practice (section 245), but the only reported adjudication in this state seems to have been made by the surrogate of Kings county. At least, I find no other adjudication, and none has been brought to my attention.

In Re Bomar's Will (Com. Pl. G. T.) 18 N. Y. Supp. 214, the surrogate for Kings county refused probate and record to certain matter as superfluous, libelous, and not dispositive. Of course, it begs the question to assume that the learned surrogate in so doing acted within his powers, but I can do no otherwise, if I am to follow that precedent at this time.

The English precedents excluding portions of a will from probate have the support of Redfield on Wills (3d Ed.) III, 52, 53, who says: "We see no reason why the same course may not be pursued here." Even if the surrogate has power to refuse probate to part of an instrument and admit other portions in case of fraud or mistake, as stated in Redfield on Wills (Burger v. Hill, 1 Bradf. Sur. 360; In re Welsh, 1 Redf. Sur. 238; Baker's Will, 2 Redf. Sur. 179; Ranken v. Janes, 10 App. Div. 400, 41 N. Y. Supp. 1129; Matter of Janes, 87 Hun, 57, 33 N. Y. Supp. 968, affirmed 152 N. Y. 647, 46 N. E. 1148; Schouler on Wills, § 219; Redfield Sur. Pr. § 245), no allegation of fraud or mistake is involved in this motion before me.

The question here concerns the power of the surrogate to refuse probate and record to a paper executed in due form, where no allegation of fraud or mistake appears. It seems to me that on the question of the surrogate's power over a public record kept under the recording system of this state the English precedents afford only remote analogies. The cases there turn solely upon the judicial powers of the officer invested in England as to all due formalities. If not intended to have testamentary operation, but to be for some collateral purpose, it is a nullity and probate will be refused. Lister v. Smith, 33 L.

J. Pr. 29. There are other earlier decisions of like purport. Nichols v. Nichols, 2 Phillimore, 180. If the English cases go to the extent of asserting that a testamentary paper, duly executed, cannot be probated if not dispositive, certainly the inferences to be drawn from the adjudications of this state do not support such an extensive power in the surrogate. Matter of Davis, 182 N. Y. 468, 75 N. E. 530, affirming 105 App. Div. 221, 226, 93 N. Y. Supp. 1004.

[6] It cannot be true that because a testamentary paper is not dispositive it should be refused probate. The statute authorizes the appointment of a guardian by will (section 81, Domestic Relations Law [Consol. Laws 1909, c. 14]); and a will to that end only is not dispositive, yet it is probative. Whether the appointment is or is not effective is dehors the instrument, and should not be considered on the probate. Matter of Davis, last cited, seems an authority for the conclusion in this state that on a mere probate proceeding the internal conditions of a testamentary paper or its external operations on property should not be considered.

[7] In so far as possible, a court of first instance is bound to give effect to even the implications contained in the decisions of the superior courts of its own jurisdiction.

[8] There is, as it seems to the surrogate, enough in the papers propounded in the cause at bar to raise the presumption that such papers were executed in good faith as a will and codicil under the statute of wills now in force, and that they ought not to be refused probate by reason of external suggestions that they were not intended to be operative as a last will and testament.

[9] Assuming, however, that the power exists in the surrogate to refuse probate and record to matter clearly scandalous, vituperative, or scurrilous, it is generally admitted that such a power should be sparingly exercised. In re Goods of Honywood, L. R. 2 P. & D. 251; Schecker v. Woolsey, 2 App. Div. 52, 54, 37 N. Y. Supp. 292.

As the matter complained of by respondents on this motion before me is not in my judgment grave enough to be harmful to respondents, I prefer not to exercise the power invoked, even if I possess it. The motion of the respondents is therefore denied.