Matter of the Application of DOROTHY F. DAVIS for Leave to Correct the Records of the Surrogate's Court, New York County, Recording the Last Will and Testament of JAMES T. DAVIS, Deceased.

(Surrogate's Court, New York County, March, 1917.)

Surrogates — duties of — lost wills — Code Civ. Pro. §§ 2486, 2490 (11).

As an incident to the duty of the surrogate under section 2486 of the Code of Civil Procedure to keep a book in which wills admitted to probate in his court must be recorded, he may, under section 2490 (11) of said Code, grant an order

Surrogate's Court, New York County, March, 1917.   [Vol. 99.

directing the correction of the record of a will *nunc pro tunc* as of the date of record although the original will appears to be lost.

Application for an order directing the correction of the record of a will probated in this court.

Hendrick & Hendrick (Worden E. Winne, of counsel), for petitioner.

Thomas Fahey, for J. Bruce Robertson.

A. Perry Osborn, special guardian for Guy R. Robertson.

Samuel J. Wagstaff, special guardian for Edith C. Davis and Albert Herbert Davis.

Fowler, S. This is an application by Dorothy F. Davis for an order directing the correction of the record of a will probated in this court. The original will is not produced on the application, but it is alleged that there is an error in the recording of the last will and testament of James T. Davis, deceased. The original will appears to be lost.

The petition sets forth that the last will and testament of James T. Davis was duly admitted to probate in this court on the 5th day of June, 1899, and that letters testamentary thereon issued to Henry C. Miner and Mary Louise Davis. It is further alleged that in and by the 1st paragraph of said will the testator devised certain real property of which he died seized known as No. 127 East Fifteenth street, New York city, to his widow, Mary Louise Davis, for the term of her natural life, and upon her death devised said property in fee to his brother, Albert H. Davis. Said will further provided by the 2d paragraph thereof that in the event said Albert H. Davis should predecease the said Mary Louise Davis said property was then

Misc.]   Surrogate's Court, New York County, March, 1917.

devised unto the executor and the executrix named therein in trust with power to sell the same, subject to the said life estate of Mary Louise Davis, and to divide the proceeds derived from such sale equally among certain remaindermen. The said Albert H. Davis, who was the father of the petitioner in this proceeding, died on the 18th day of February, 1916. Mary Louise Davis, the life tenant, is still living.

The said last will and testament is recorded in Liber 608, page 404 of Wills, in the office of the surrogates for this county. As actually recorded it reads as follows: " *Second.* Should my brother, Albert H. Davis, die before my wife, Mary Louise Davis, I give, devise and bequeath the said before mentioned real property No. 127 East Fifteenth street, to my executor and executrix in trust with power to sell the same subject to the life estate of my wife, Mary Louise Davis, and to divide the proceeds derived from such sale equally among and between the lawful children of my niece, Mrs. Walter P. Robertson, share and share alike."

The petition alleges that the error committed in the recording of the original will of James T. Davis consists in the omission of the words " the lawful children of my brother, Albert H. Davis, and " in the 2d paragraph thereof, and that the recorded instrument should read as follows: " *Second,* Should my brother, Alfred H. Davis, die before my wife, Mary Louise Davis, I give, devise and bequeath said before mentioned real property No. 127 East Fifteenth street, to my executor and executrix in trust, with power to sell the same, subject to the said life estate of my wife, Mary Louise Davis, and to divide the proceeds derived from such sale equally and among and between the lawful children of my brother, Albert H. Davis, and the lawful children of my niece, Mrs. Walter P. Robertson, share and share alike."

29

Surrogate's Court, New York County, March, 1917.   [Vol. 99.

In accordance with the prayer of the petition a citation was issued out of this court to all the children of the said Albert H. Davis and Mrs. Walter P. Robertson to show cause why the prayer of the petition should not be granted. Upon the return of the citation the surrogate, because of the adversity of interests between the two sets of infants interested in this proceeding, appointed A. Perry Osborn, special guardian for Guy R. Robertson, and Samuel J. Wagstaff, special guardian for Edith C. Davis and Albert Herbert Davis. The only other appearance in the proceeding was J. Bruce Robertson, who appeared by his attorney, Thomas Fahey.

Upon the hearing, which was directed to be held by the surrogate and which was not contested, it developed that at the instance of the petitioner an examination of the recorded instrument and a search of the records of this court were made by Worden E. Winne, her attorney, who found that the original will had been taken from the court on June 10, 1905, by one Warren S. Burt, for the purpose of using the same as an exhibit in a Municipal Court action then pending, in which some of the parties to this proceeding were interested. Mr. Winne then called at the Municipal Court in order to search the records thereof for the will in question, and found that owing to a fire the court records were not in regular order. He succeeded, however, in finding the papers in the action brought by the widow of James T. Davis against Albert H. Davis, but did not find among them the original will of James T. Davis. Subsequently a further search was made among the papers of Mr. Burt, who had died in February, 1916, by his associate, Mr. Fahey, and by Mrs. Maria A. Burt, widow of Mr. Burt, but to no purpose. Thereupon there was placed on the stand Maurice Meyer, an attorney and coun-

selor at law, who testified that he was for many years the attorney for James T. Davis, and prepared the will which was probated in this court on the 5th day of June, 1899. He also testified that he acted as a witness to the will along with a clerk in his office, whose whereabouts are now unknown. He then produced a copy of the will of James T. Davis, which he testified was an office copy prepared at the same time as the original. Mr. Meyer further testified that this copy was prepared and retained in his office pursuant to his custom in such matters, and was, '' to the best of his knowledge, belief and recollection,'' a true copy of the original. The copy of said will received in evidence contains the clause alleged to have been omitted in the instrument as recorded in this office. None of this testimony was objected to and it was taken without objection.

I hesitate, in view of the failure to produce the original will of James T. Davis, to grant this application. But the acquiescence of all the parties interested, and the uncontradicted proofs submitted in support of the petition seem to justify it, if I have jurisdiction. The important question in this proceeding, however, has to do with the power of the surrogate to grant the relief sought.

I may remark parenthetically that had the original will been set out in the decree of probate, or a true copy thereof annexed to the decree, this application would not have been necessary. I have often intimated in this court that in my judgment such was the better practice, and whenever the constituents or text of the will was in doubt I have insisted on it. But I have long hesitated to insist in other cases on any such practice in view of the long established practice to the contrary. In wills of vast estates the innovation might be useful, especially if the record of wills were to be

**452** Matter of Davis.

destroyed in any way and the original will then lost or destroyed. A certified copy of a decree of probate, setting out the will probated, would be evidence in any court.

When the will of James T. Davis was probated, the original will was to be retained by the surrogate until the expiration of one year after it had been recorded, and then it could be returned unless there was a proceeding to revoke probate, to the person delivering it, or under certain circumstances to other persons. 2 R. S. 66, § 54; Code Civ. Pro. § 2635. This provision has since been repealed by the latest revision of the Surrogates' Law.

The surrogate is required to record in his office every will therein probated. Laws of 1787, chap. 38; 1 R. L. of 1813, 4; 2 R. S. 57, 58, 60, 68; old Code of Civil Procedure § 2623; present Code of Civil Procedure, § 2620. The obligation to record probated wills certainly requires the surrogate to record them correctly, and where they are recorded incorrectly the chief recording officer presumably has power to make the record conform to the fact. The statute now prescribes that a book shall be kept for the purpose of recording wills. Section 2486 of the Code of Civil Procedure requires that each surrogate must provide and keep the following books: " Subdivision 1. A record-book of wills, in which must be recorded, at length, every will required by law to be recorded in his office and the decree admitting it to probate."

I do not find any statute which expressly confers jurisdiction on the surrogate to grant the relief sought under the circumstances set out in this proceeding. If he has it at all it results by implication only. A jurisdiction by implication never has been and is not now much favored in courts of this character. The implication in any event must be extremely clear to be

sustained. It is a general principle of law that the surrogates' jurisdiction is peculiar and particular, as that of all courts of like character in common-law countries has been for time out of mind. There is nothing new about this limitation to lawyers who have a comprehensive knowledge of the jurisprudence of the common law, although it is sometimes intimated by our courts as a principle confined to the Surrogate's Court of New York.

Whenever I find no precedent for the surrogates' judicial action in statutes or in our own books or in the books of the common law I am somewhat careful not to usurp judicial powers from mere implications. That there is a jurisdiction somewhere to grant the relief sought I have no doubt. Whether the surrogate has it is the only question.

In *Matter of Meyer,* 72 Misc. Rep. 566, I attempted to classify the powers and duties of the surrogate as ministerial, judicial and inquisitorial. I was then of the opinion that the surrogates' power over the record of wills was very limited. P. 569. I have in other matters alluded to the nature of the surrogates' peculiar jurisdiction. *Matter of Connell,* 75 Misc. Rep. 574; *Matter of Work,* 76 id. 403, 411, overruled on another point; *Matter of Swartz,* 79 id. 388. The jurisdiction is largely derivative and historical in origin and the history is long and complex. It has been from time to time attempted to be prescribed or regulated by statute and in the main it is so regulated. The modern tendency has been to enlarge the surrogates' jurisdiction in all directions and then to treat the jurisdiction as circumscribed by the statute only. But without reference to the common law the statutes affecting this court are not always intelligible or workable. But with the aid of the common law the natural limitations on the surrogates' jurisdiction,

Surrogate's Court, New York County, March, 1917. [Vol. 99.

however conferred, become very apparent. It is circumscribed, particular and peculiar. The court itself is always classed by common lawyers among the " peculiar courts " known to our jurisprudence, and it is contradistinguished from the courts vested with jurisdictions of common-law origin.

Whether the statutes relating to the establishment of lost wills (Code Civ. Pro. §§ 1861–1867, 2613) had any real reference to such cases as this was a question which occurred to me on the argument of this application. But after due consideration I have come to the conclusion that this matter does not fall within those sections. This is a proceeding to amend *nunc pro tunc* a record of a will not lost, but duly probated, and only negligently recorded by no default of the parties themselves. The will in this instance is not to be established, or reprobated, or rerecorded.

In reference to my jurisdiction I may remark that the tendency of modern legislation is to take the Surrogates' Courts out of the class of peculiar courts known to the common law and place them in a new classification. This new dichotomy of jurisdictions seems to comprehend two classes of courts of original and general jurisdiction in law and equity; one having general jurisdiction over the affairs and property recently of the dead, and the other over the affairs and property of the living. That the new classification is scientifically defective goes without saying. The jurisdiction of courts like the surrogates' was never, even in its original and more limited extent, justifiable on any except historical grounds. But with this new legislation and classification I have nothing to do except to heed it. The jurisdiction is conferred by the legislature, and that ends it in so far as the surrogate is concerned.

We come now to the more immediate consideration

of the surrogates' jurisdiction of this matter in the light of the new and existing legislation. Section 2490 of the Code of Civil Procedure gives the surrogate, in or out of court, the power, as the case requires:

" 6. To open, vacate, modify or set aside, or to enter as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision must be exercised only in a like case, and in the same manner, as a court of record and of general jurisdiction exercises the same powers. * * *.

" 11. With respect to any matter not expressly provided for in the foregoing subdivisions of this section, to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court having by the common law jurisdiction of such matters, except as otherwise prescribed by statute; and to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred."

Respecting the general jurisdiction of the Surrogate's Court section 2510 of the Code of Civil Procedure provides as follows:   " Each surrogate must hold, within his county, a court, which has, in addition to the powers conferred upon it, or upon the surrogate, by special provision of law, jurisdiction, as follows:

" To administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full,

equitable and complete disposition of the matter by such order or decree as justice requires.''

It would seem that sections 2490 and 2510 of the Code of Civil Procedure intend to make the jurisdiction of the surrogate effectual to the full, equitable and complete disposition of all matters relating to the affairs of the dead where the will is probated or administration granted in his county. The jurisdiction must yield, however, in any particular special proceeding to the special limitation of the statute relating to that proceeding. See *Matter of Holzworth*, 215 N. Y. 700, affg. 166 App. Div. 150. While the present surrogates have only such jurisdiction as is conferred by statutes, construed by the common law and prior practice, they have in addition such incidental powers as are necessary to the exercise of the jurisdiction thus conferred. *Matter of Camp*, 126 N. Y. 390; *Matter of Runk*, 200 id. 447, 457. But in the exercise of these incidental powers a surrogate cannot proceed upon some novel theory of his own. He must always have reference to established usage and precedent. *Martin* v. *Dry Dock, E. B. & B. R. R. Co.*, 92 N. Y. 70, 74. I discussed this point in *Matter of Carter*, 74 Misc. Rep. 7.

This proceeding seems to have been brought more particularly under subdivision 6, section 2490 of the Code of Civil Procedure, and an attempt made to comply with the procedure necessary in similar applications in other courts of record. A petition was filed, a citation was issued and a judicial hearing of the parties had. *Matter of Henderson*, 157 N. Y. 423, 428; *Matter of Peck*, 131 App. Div. 81; *Matter of Robertson*, 51 id. 117; affd., 165 N. Y. 675. I prefer, however, to sustain this application, if I am to grant it at all, under subdivision 11 of section 2490 of the Code of Civil Procedure. This section contains a significant

authority to the surrogate " to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred." Section 2486, of the Code of Civil Procedure, as already stated, makes it the duty of the surrogate to keep a book in which wills admitted to probate must be recorded. As an incident to such duty it may be within the province of the surrogate, in a proper proceeding such as this, to order the correction of patent errors in such records proven to exist through the fault of the recording officer of this court. The same principle has been held in *Matter of Regan,* 167 N. Y. 338, 343, and Matter of Henderson, 157 id. 423, and I think it applies here. A similar question came up before Mr. Surrogate Rollins, and although it was not much examined he seems to have had no doubt about his power to amend the record of wills. *Dyer* v. *Erving,* 2 Dem. 160.

What the effect of amending the record of the will by the decree of the surrogate may be on the rights of the parties, their privies or assigns, I do not pretend to consider. That point and the evidential effect of the decree remain, as Chancellor Kent said, at the risk of the parties to a court proceeding. Application granted and record amended *nunc pro tunc* as of the date of record.

Application granted.