In the Matter of the Probate of the Will of EDWARD F. CROKER, Deceased.

Surrogate's Court, Suffolk County, May 4, 1951.

*Scheinberg & Wolf* for Robert V. Croker, proponent.

HAZLETON, S. This is an application to strike from the instrument propounded as the last will and testament of the decedent, certain words therein contained on the ground that they are scandalous, libelous and scurrilous. The language objected to by the proponent unquestionably falls within that category.

The desire of the reluctant dead to influence for yet awhile the affairs of the living by a testamentary declaration is undoubtedly as old as man's concept of ownership, but the power to do so is only as old as the statutes which expressly grant him the legal right, within prescribed limits, to distribute his assets as he sees fit. (*Matter of Watson,* 262 N. Y. 284, 293, 294; *Matter of Sidman,* 154 Misc. 675, 676.)

If a tomb is said to be man's last vanity, his will may be said to be a last statement of his life's philosophy; his valediction to the living who struggle on, only momentarily aware of his departure.

Fortunately, most persons are content to take their animosities to their graves with them, expressing only their likes, rather than dislikes; only omissions indicating their discontents and antagonisms.

What then, of a testator, who deliberately and needlessly renders articulate by his will all his pent up frustrations, his desire for revenge unanswerable by the living victim, his unreasoned prejudices, his desires for spite past the grave; or who acts as a result of the unhappy and ill-founded suspicions of a mind once more noble, but later weakened and debased by the remorseless toll of time and infirmity?

If his will be deliberately scandalous, libelous or scurrilous, should he be permitted to subvert power granted to him for good into an instrumentation of revenge or retaliation to be read and pondered by a curious and hostile world, to point the finger of scorn and contumely at one of the living who is unable to answer effectively the hushed but still living voice of the decedent?

And if the libelous, scandalous or scurrilous allegation in his will be not his rational expressions, should not the decedent's memory be even more protected in his inability to do himself justice? Should the kindness, virtue and constancy of a lifetime be destroyed by ill-advised and half understood language in a testamentary document?

What recourse has a person injured by a libelous or scurrilous testamentary declaration, be it either intentional or unintentional?

The fact that it has been held that a libelous will gives an action against the estate for libel by way of the executor gives no real remedy to the damaged person, for it has also been pointed out that a good name is beyond price, and once destroyed can never be fully regained. (*Brown* v. *Mack,* 185 Misc. 368; see, also, *Matter of Gallagher,* 10 Pa. Dist. Ct. 733; *Harris* v.

*Nashville Trust Co.,* 128 Tenn. 573; Note, 49 L. R. A. [N. S.] 897; Note, 87 A. L. R. 234, and *Citizens & Southern Nat. Bank* v. *Hendricks,* 176 Ga. 692.)

Even a superficial consideration of the question indicates a need for discretionary power in the Surrogate to decline to admit to probate offensive passages in a will, at least where such passages are not dispositive and not essential to understanding the purport of the will.

Cases have consistently held that words and phrases in a will which are not dispositive are not actual parts of the will (*Matter of Janes,* 87 Hun 57, affd. 152 N. Y. 647; *Matter of Maguire,* 105 Misc. 433), and while it is stated in a number of the textbooks that the probate court may omit from probate libelous or scandalous passages in a will, few cases are to be found where this has been done, and it has been said that it is at least doubtful whether the probate court has such power where the exclusion would affect the meaning of the will. According to some decisions an action lies against the executor as such for the probate of a will which is libelous. (28 R. C. L., Wills, § 360; 57 Am. Jur., Wills, § 785.)

"Again scurrilous or scandalous characterizations written in to satisfy some vindictive or malicious whim or grudge of the testator may, on due application, be expunged". (Jessup-Redfield on Law and Practice in the Surrogates' Courts [1925 ed.], p. 556 [No cases cited].)

The first recorded case the court has been able to find which is directly in point is *Matter of Bomar* (18 N. Y. S. 214 [1892], 34 L. R. A. [N. S.] 974; 49 L. R. A. [N. S.] 899, note; 87 A. L. R. 236, note; An. Cas. 1914 [p. 890]), where testator, having disposed of his entire estate by previous provisions saw fit to add: "*Item.* And whereas, one of my sons * * * is deceased, and there is a child in existence which is claimed to be his, and which is named * * *, now it is my will that no portion of my estate, real or personal, shall go to or belong to him, his heirs or representatives." (P. 215.) The court stated "A will is an instrument which disposes of one's property, to take effect after death, and should not be permitted to be made a vehicle for libel or contumely; and, when such design plainly appears from the context, such matter, in so far as it is not dispositive, should be refused probate and record." (P. 215.)

"I have been unable to find any case in this state in which this point has been passed upon, but there have been cases elsewhere which establish that probate of part of a properly attested will may be decreed while the rest is rejected; and it would appear

that something superfluous may be expunged from a properly executed will, though the right to insert words or reform a sentence is denied." (P. 215.) The authority given is Schouler on Wills, § 219; *Rhodes* v. *Rhodes,* L. R. 7 App. Cas. 192; *Allen* v. *M'Pherson,* 1 H. L. Cas. 191; *Fawcett* v. *Jones,* 3 Phil. Ecc. R. 434, and *Morris* v. *Stokes,* 21 Ga. 552, and the court recites a statement in Redfield on Wills (1886 ed., Vol. 2, p. 43) indorsing the English rule.

It should be noted that the court specifically limited its decision to offensive words containing no testamentary disposition and which are not a necessary or operative part of the will.

The next case in point is *Matter of Meyer* (72 Misc. 566 [1911])· in which a motion was made before probate to strike certain matter from the codicil as scandalous, scurrilous, improper and not dispositive.

The court stated that " The power of the surrogates of this State to expunge matter from an original will in any case, to my mind does not exist " (p. 567), continuing (p. 568) : " There does not seem to be any express adjudication of a court in this State upon the surrogate's power to expunge matter from an original will or codicil brought into court for probate, but on general principles it would seem apparent that the surrogate possesses no such power as that invoked by the respondent. The codicil is not the property of the State; it is to be returned after record to a rightful claimant, and the power of courts over the documentary property of the citizens of the State is subject to established limitations. It does not extend by implication in any case to the destruction or mutilation of property entrusted to its care for well-defined purposes. It is for this reason that a testamentary paper brought into court should never be marked even for identification. The proceeding is on the paper, and if probate is refused the document is returned intact and unharmed."

After citing the English authority which follows this rule, the court added: " Consequently, the respondent's motion, if it can be entertained at all, can only be regarded as a motion to refuse probate and record to the alleged offensive matter, and not as a motion to expunge matter from an original document." (P. 568.)

Examining a possible statutory grant of power to the Surrogate to refuse to admit to probate such undesirable matter the court declines to decide whether such statutory power exists or not, and continues:

"It is to be observed that the powers of the surrogates in the present organization of the State are judicial, administrative and inquisitorial. Every one of these powers is distinct. As a judicial officer the surrogate's jurisdiction, but not the mode of its exercise or the principles of its construction, is prescribed by statute. As an administrative officer the surrogate's powers and duties and the mode of their execution are wholly statutory. His inquisitorial power, very limited in extent, is also wholly statutory. The last power is not dissimilar to the former and highly responsible power of a notary or prothonotary. Indeed, all these offices are borrowed from the same ancient house, one in origin wholly foreign to the common law of the State, except in so far as that common law is held to embrace portions of the civil or canon law.

" The extensive jurisdiction of the surrogates as probate officers and the exercise of their powers as probate judges at the audience, or in other words, on the trial of matters within their jurisdiction, are also very different things. It is generally conceded that such jurisdiction may be prescribed by statute, and yet, that the exercise of the powers entrusted may be influenced and is, as a fact, influenced, by precedents of courts from which their jurisdiction is borrowed. Brown, Juris. (2d ed.) 421. This is necessarily true whenever an ancient and borrowed jurisdiction is invested in a judicial officer in this State by statute or constitutional reservation. The distinction noted is not always observed in practice, and its neglect gives rise occasionally to great inaccuracies of statement. Jurisdiction is the judicial *dicere jus,* but how the pronouncement is to be made is another matter. Sometimes it is regulated by practice acts, but in the absence of such regulation, by the ancient precedents derived from the borrowed jurisdiction. Pom. Mun. Law, 98, 99.

" Having reference to the outline of general principles just made, I confess that if it were an original question there would be to my mind some doubt whether the surrogates of this State are now invested with judicial powers over the records of wills to such an extent that they may even refuse to decree probate to any part of a testamentary paper held to be executed with due solemnities and in good faith propounded to them for probate. But as the general opinion is the other way, and there is a solitary judicial precedent for such action, I shall in this matter defer to such precedent and not regard it as an open question." (Pp. 569–570.)

The court points out that the solitary precedent which it is following (*Matter of Bomar, supra*) in turn bases its decision largely on a statement contained in Redfield on Wills. The court, obviously uneasy with the authority relied upon in *Matter of Bomar* (*supra*) places its finger directly upon the pivotal issues, saying,

" Of course, it begs the question to assume that the learned surrogate in so doing acted within his powers, but I can do no otherwise if I am to follow that precedent at this time." (P. 571.)

It is further pointed out that the English cases cited are " remote analogies " due to the difference between our recording statutes and the judicial power of the officer invested in England with the probate jurisdiction. The court states: " It cannot be true that because a testamentary paper is not dispositive it should be refused probate. The statute authorizes the appointment of a guardian by will (Dom. Rel. Law, § 81), and a will to that end only is not dispositive, yet it is probative." (P. 572.)

In conclusion the court deliberately avoids the issue by pointing out that even if the power to delete is present, it is generally admitted that such a power should be sparingly exercised, and: " As the matter complained of by respondent on this motion before me is not in my judgment grave enough to be harmful to respondent, I prefer not to exercise the power invoked, *even if I possess it.*" (P. 572. Italics mine.)

Thus, this case is not authority for the existence of such power, and contains strong dicta to its lack of existence.

Fifteen years later in 1926, *Matter of Speiden* (128 Misc. 899) was decided, the objectionable language being in explanation of the substitution of a new trustee for the former one. The court deemed the motion to strike as, in effect, a judgment on the pleadings and said that " I pointed out that without regard to the validity of any of its provisions, where the will was executed with all the statutory requirements by a competent testator not under restraint, the paper must be admitted to probate." (P. 900.)

However, the court then strikes the objectionable language on the grounds that it is not dispositive or an essential testamentary provision.

The court ignores the questioning doubts of the earlier court in *Matter of Meyer* (*supra*) and blandly states, " It is clear that the surrogate possesses complete power to exclude objectionable matter contained in a testamentary script from the

form of the last will as admitted to probate and as recorded in the records of the Surrogate Court.'' (Pp. 900–901.) Citing the *Bomar* case (*supra*) and referring to *Matter of Meyer* (*supra*) which is not in point, the court takes a pragmatic view of the problem explaining that only by the exercise of such power may the publication of a post-mortem libel or the recording of indecent or offensive language written by a testator or the draftsman of a will be denied judicial recognition.

In 1936, in *Matter of Draske* (160 Misc. 587), an exhaustive examination of the instant question was made, and the court states: '' Research indicates that the question of the authority of a court to exclude from the probate or record portions of a duly authenticated testamentary document, has been made the direct subject of reported adjudication on only eleven occasions in the entire experience of the common law of the United States and the mother country, eight of these cases being found in the English reports, and three in those of the State of New York. There are also three decisions respectively in Pennsylvania, Tennessee and Georgia, which are pertinent in a general consideration of the subject, on the related subject of a right of action against an estate for testamentary libel.'' (P. 589.)

The examination by the court goes into the eight English cases therein cited, which clearly show the modern English rule to be that the surrogate has power to refuse to admit to probate libelous, scandalous or scurrilous nondispositive matter in a will otherwise proper in form, although the earlier decisions were to the contrary.

The court mentions the reluctance of Surrogate FOWLER in *Matter of Meyer* (72 Misc. 566, *supra*) to find sufficient authority to justify a refusal to probate objectionable nondispositive language in a will on statutory grounds, but feels that '' the action of the Legislature in 1914 (Laws of 1914, chap. 443) in concentrating jurisdiction over decedents' estates in Surrogates' Courts (*Matter of Raymond* v. *Davis,* 248 N. Y. 67, 72) would seem to have rendered his observations in this connection presently archaic.'' (p. 592), and further cites *Matter of Speiden* (128 Misc. 899, *supra*) as additional authority.

The court further points out that no determination of the question has ever come before a court of appellate jurisdiction.

The court states: '' Consonant with this conception that the basic right of testamentary disposition concerns merely affirmative donative directions, it is well established that expressions in the will of a competent testator concerning the reasons or

motives for a given devise or bequest are wholly immaterial. (*Clapp* v. *Fullerton,* 34 N. Y. 190, 197; *Matter of White,* 121 id. 406, 414; *Thompson* v. *Thompson,* 21 Barb. 107, 114; *Matter of Bedlow,* 67 Hun, 408, 414; *Matter of O'Dea,* 84 id. 591, 593; *Matter of Bethune,* 15 N. Y. St. Repr. 294, 296; reported by memorandum only, 48 Hun, 614; *Matter of Tracy,* 11 N. Y. St. Repr. 103, 105; reported by memorandum only, 46 Hun, 675; *Boell* v. *Schwartz,* 4 Bradf. 12; *Thompson* v. *Quimby,* 2 id. 449, 509; *Matter of Lang,* 9 Misc. 521, 522; *Matter of Shumway,* 138 id. 429, 435.) They will not modify an otherwise clearly expressed donative intent, nor supply one which is otherwise absent.

" It follows as a logical sequence that a testator, as a purely legal matter, possesses no basic right to require from the administrators of the law the recognition or perpetuation of any expression of wish or feeling which is not directly relevant to an affirmative disposition of a portion of the assets belonging to him. This statement, of course, includes the persons by whom he desires his estate to be administered, and the rules which are to guide their conduct. The inclusion in the will of anything in excess of such directions is pure surplusage possessing no claim to judicial protection or perpetuation.

" The fact that the insertion of the superfluous language is in most instances innocuous cannot alter the basic principle that the only inherent legal right of the testator is, in so far as not restricted by positive rules of law, merely to make bald and categorical directions, respecting the administration and affirmative disposal of his property." (Pp. 593–594.)

" Even though it might be deemed that a physical excision of a defamatory expression on probate, as hereinbefore considered, would amount to an unwarrantable extension of the authority of the court in this connection, it would seem that substantial compliance with the spirit of the statutory directions noted might be accorded even though the obnoxious language were to be eliminated from probate and record, by adopting the definition of ' will ' hereinbefore indicated, as the affirmative expression of intent of the testator respecting the administration and disposition of his material possessions upon his death." (P. 595.)

The most recent case this court has been able to discover is *Matter of Palmer* (N. Y. L. J., March 26, 1951, p. 1069, col. 4) concerning a motion to expunge matter from the paper propounded as the last will of the deceased, there being no opposition to the motion.

The court states briefly, " The matter complained of by the moving party does not dispose of any portion of the estate and the omission of such matter from the instrument will not change the paper's legal effect or influence in any wise the administration of the estate. The motion is granted to the extent here indicated."

Directions are given to expunge the objectionable nondispositive language from " any *copy* [italics mine] of the instrument in the records or files of the court and any decree admitting the paper to probate will set forth the text of the instrument with the exception of the above-identified text of the fifth clause " and it is directed that " The original instrument will be placed in a sealed envelope and will be exhibited only upon direction of a surrogate of this court or upon court order."

The authority I have discussed finds and affirms the existence of a discretionary power in the Surrogate to refuse to admit to probate nondispositive and objectionable terminology in an otherwise regular will where no objections are made by the interested parties. The authority is not of appellate determination, but as long as the decided cases are uncontroverted, they constitute the law to me.

It is true that the original authority for the proposition is arguable, but the strength and wisdom of the law, and indeed, its ultimate justification, are its adaptability to the needs of a changing civilization and culture. Society has come a long way from the statement made in *Hagan* v. *Yates* (1 Dem. 584, 596 [1883]) concerning a testator's authority: " He may be generous or mean at his pleasure, may give none, or give part, or give all to the members of his own family, may use his will for displaying kindly or vindictive sentiments, may indulge, if he chooses, his whims, his spite, his vanity, his egotism, his animosities to the top of his bent, and if he is not deficient in mental capacity and is observant of the forms which have been established by law for the execution of testamentary instruments his wishes must be respected by the courts, at least to the extent of adjudging that they be made effectual."

In our courts, at least, he may no longer indulge his spite or animosities to the top of his bent, whether he could or not in 1883.

It is obvious that the court should not have the power to excise the offensive language bodily from the original docu-

ment; such action might destroy evidence of testamentary capacity and intent, as noted in *Brown* v. *Mack* (185 Misc. 368, *supra*) in holding an executor liable as such for publishing a testamentary libel: "Further, in this case, if the plaintiff had contested the will claiming lack of testamentary capacity or undue influence, the testator's reasons for disinheriting plaintiff stated in his will would be pertinent and material and admissible as part of the will on the trial. The fact that one of the reasons given is libelous per se should not affect its admissibility * * * even though his estate must defend a libel action." (P. 377.)

Then, too, the Surrogate should not be placed in a position where interested parties might dispute his decision as to what is libelous, scandalous or scurrilous. The original instrument should be preserved as a safeguard against the human fallibility of even the Surrogate, but is not to be made accessible to the curious or morbid.

The application to expunge from the will as admitted to probate the words in paragraph *First* following the first sentence which ends with the word "money", and the words in paragraph *Second* following the first sentence which ends with the word "money", and the words in paragraph *Third* following the first sentence which ends with the word "money" is granted upon the grounds that the words are scandalous, libelous and scurrilous, are not dispositive, and such deletion is unopposed by any of the parties.

The original paper propounded as the last will of Edward F. Croker will be sealed in an envelope and will be exhibited only upon direction of the Surrogate of this court or upon court order.

Submit order on notice.