No. 10,283.

CURTIS v. THE PEOPLE.

Decided December 4, 1922.

Plaintiff in error was convicted of statutory rape.

*Reversed.*

1. CRIMINAL LAW—*Opening Statement—Evidence.* In a criminal case, it was error to refuse counsel for defendant permission to outline in his opening statement to the jury, an alleged conspiracy to prosecute.

   The exclusion of testimony which had a direct bearing on the question of motive of the prosecuting witness was also error.

2. *Rape—Evidence of Acts, Prosecution for which was Barred by the Statute of Limitations.* In a criminal prosecution for rape, it was error to permit the defendant to be cross-examined, over objection, as to alleged illicit relations with the prosecuting witness occurring more than three years prior to the filing of the information.

3. *Instructions—Conspiracy.* In a criminal prosecution, it was error for the court to instruct the jury that no conspiracy to prosecute had been legally proven, where there was evidence tending to establish such a conspiracy.

4. *Mis-Conduct of District Attorney.* The district attorney on the trial of a criminal case, stated that he knew a witness for the defense was acting corruptly. The statement being allowed to stand without rebuke, caution, or explanation, was highly prejudicial to the defendant, and constituted reversible error.

*Error to the District Court of Routt County, Hon. Gilbert A. Walker, Judge.*

Mr. HENRY MCALLISTER, JR., Mr. A. M. GOODING, for plaintiff in error.

Mr. VICTOR E. KEYES, attorney general, Mr. SAMUEL CHUTKOW, assistant, for the people.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error (hereinafter referred to as defendant) was charged with statutory rape committed August 28, 1918, upon the prosecuting witness, Florence M. Fortune, at that time thirteen years of age. The information was filed April 27, 1921. A verdict of guilty was returned by the jury and defendant was sentenced to the penitentiary for a term of three to five years. To review that judgment he prosecutes this writ.

Mrs. May Reardon is the wife of Tim Reardon and the mother of the prosecuting witness. W. W. Curtis is the father of defendant. Milner is a station on the Denver & Salt Lake railroad in Routt county west of Steamboat Springs, the county seat, near which is located the Curtis mine controlled during the times herein referred to by W. W. Curtis. On and prior to August 28, 1918, defendant was acting as superintendent of the Curtis mine. Tim Reardon was an engineer employed there, living with his family in the camp, and defendant boarded with them. The relations between defendant and all members of the Reardon family were very close. Late in August, 1918, defendant entered the government service and upon his return to Colorado after the war became superintendent of the Rapson mine in Las Animas county. During a portion of his absence he corresponded with the prosecuting witness and with her father and mother. In August, 1920, Tim Reardon was made superintendent of the Rapson mine and friendly relations between his family and defendant were renewed and continued until the latter left Rapson in December, 1920. In September preceding, defendant became engaged to another woman, and this fact was made known to the prosecuting witness and the Reardons and was unprotested by any of them although Florence Fortune says she considered herself then engaged to marry defendant. In March, 1921, Reardon had a conference of some kind with W. W. Curtis, as a result of which the former's employment was terminated. In the latter part of that

month defendant sued Tim Reardon in justice court at Rapson to recover an unpaid balance on the purchase price of an automobile and caused an attachment writ to be issued.

The position of the prosecution was that illicit relations began between defendant and the prosecuting witness in the spring of 1918, and continued up to the date alleged in the information, and that during all that time an engagement of marriage existed between them. There is no claim that such relations were renewed during the residence of the parties at Rapson and no complaint was ever made by anyone and no hint given of the existence of such relations prior to the date of the service of said attachment writ. The constable who served the writ testified that at that time Tim Reardon, in the presence and hearing of the prosecuting witness and her mother, became very abusive of defendant and threatened this criminal prosecution. Another witness, Neuffellin, who was there present, corroborated this testimony. Within a few days thereafter the Reardon family went by automobile to Steamboat Springs where the matter was taken up with the office of the prosecuting attorney and this information was filed as hereinbefore stated. It was the claim of the defense that the circumstances connected with the termination of Reardon's employment by W. W. Curtis and the bad blood engendered by the attachment suit were responsible for a criminal prosecution which had no foundation in fact. Much evidence was offered, and some admitted, in support of that contention. Plausibility is given it by the continuation of friendly personal and family relations for almost three years after the date of the alleged offense, the known and unprotested engagement of the defendant to another, the absence of any claim of a renewal of illicit relations at the time of the reunion of the parties, the failure to make complaint until the statute of limitations had almost run, and this prosecution initiated hard upon the heels of a civil suit.

The trial court refused counsel for defendant permission to outline his contention as above set forth in his opening address; to cross-examine the prosecuting witness concerning statements said to have been made by her during the period of alleged illicit relations, tending to show her attitude toward the defendant; to cross-examine her concerning the reason for the termination of Tim Reardon's employment at the Rapson mine, her knowledge thereof and the connection between such facts and the bringing of this charge; or to cross-examine her concerning the purpose for which the family went from Rapson to Steamboat Springs, and who was present when the information was signed. All these things had a direct bearing on the question of motive and were clearly admissible. *Trozzo v. People,* 51 Colo. 323, 330, 117 Pac. 150.

Each of these rulings was erroneous. Taken together they were highly prejudicial and demand a reversal of the judgment.

Defendant was cross-examined, over objection, as to alleged illicit relations with the prosecuting witness more than three years prior to the filing of the information. Such offenses, if committed, were barred by the statute and the objection should have been sustained. *Bigcraft v. People,* 30 Colo. 298, 304, 70 Pac. 417.

Instruction No. 5 excluded from the jury's consideration the question of a conspiracy between the Reardons and the prosecuting witness and advised the jurors that no such conspiracy had been legally proven. In view of the testimony of the constable and the witness Neuffellin, the exclusion of testimony tending to prove a conspiracy, and other admitted facts in the case, this instruction constitutes reversible error.

Florence Fortune was asked on cross-examination who was present when the information was verified, the purpose being to show that she was accompanied by the Reardons who had brought her to Steamboat Springs to institute this action in furtherance of the alleged conspiracy. She was not permitted by the court to answer but the

district attorney volunteered the statement, "There wasn't anybody there except the witness and myself," and that statement was allowed to stand.

On re-direct examination the witness Neuffellin was asked if he had been promised any compensation or reward tor testifying, to which the district attorney objected, and in answer to the statement of counsel for defense that such compensation had been insinuated the district attorney replied, "I not only insinuate it, but I believe it. I know it." That reply was allowed to stand without rebuke, caution or explanation. It was highly reprehensible and prejudicial and constitutes reversible error. *Miller v. People,* 70 Colo. 313, 201 Pac. 41.

Not only was the district attorney permitted to testify that he knew this witness was acting corruptly but an objection to the question was sustained by the court and thus the witness himself was forbidden to deny the charge.

There are numerous other errors in this record which, for reasons not here necessary to state, seem unlikely to occur upon a retrial and which it is therefore unnecessary to examine.

The judgment is reversed and the cause remanded.