UNITED STATES v. 5 CASES, MORE OR LESS, CONTAINING "FIGLIA MIA BRAND", etc., et al. (5 cases).

No. 81, Docket 21430.

United States Court of Appeals
Second Circuit.

Argued Dec. 5, 1949.

Decided Jan. 10, 1950.

See also 9 F.R.D. 81.

Avrutis & Zizmor, New York City, Julius Zizmor, New York City, of counsel, for appellant.

Alexander M. Campbell, Assistant Attorney General, and Adrian W. Maher, United States Attorney, Hartford, Conn., Vincent A. Kleinfeld and John T. Grigsby, Attorneys, Department of Justice, Washington, D. C., and Edward K. Adelsheim, Attorney, Federal Security Agency, of counsel, for appellee.

Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by Antonio Corrao Corporation from a decree condemning certain cases of edible oils which the appellant had blended in its plant in Brooklyn, New York, and shipped to purchasers in Connecticut in June 1948. The libel of information in each of the five consolidated proceedings alleged that the oil was adulterated within the meaning of the Federal Food, Drug and Cosmetic Act,[1] in that (1) it contained little if any, olive oil, (2) artificial flavoring had been added to simulate olive oil, and (3) squalene had been added.[2] The libel also charged misbranding in that the label statements as to the percentage of pure olive oil were false and misleading.[3] The jury returned a special verdict finding that the goods were adulterated and misbranded as charged. The appeal challenges the sufficiency of the evidence to support the verdict and assigns numerous errors to the conduct of the trial.

■ 1. The evidence is sufficient: Squalene is a hydrocarbon found in olive oil. The squalene content of blended edible oils is the universally accepted criterion of the amount of olive oil present in a blend. However, squalene is also found in shark liver oil and it is impossible to distinguish one squalene from the other. Consequently by adding shark liver squalene to peanut oil a blend can be produced which will appear to contain 10% or 20% of olive oil although in fact it contains little or none. Knowing that the commercial source of shark liver squalene was a distilling company in Rochester, government agents "marked" it by mixing a small amount of anthranilic acid in the Rochester company's product. If any of this "marked" squalene were added to peanut oil to make the blended oil measure up to the squalene test for olive oil, the fraud could be detected by using a chemical which would cause the anthranilic acid to take on a reddish hue. The

chemical test, when it was applied to the seized samples of appellant's oil, disclosed that they contained anthranilic acid. A shipment of the Rochester company's "marked squalene was traced to Memmoli in Brooklyn, and he was shown to be an acquaintance of the appellant's president. The "marked" squalene was not traced beyond Memmoli but it was extremely improbable that any anthranilic acid should have gotten into the seized samples except from using the "marked" squalene traced to him. The appellant suggests that anthranilic acid may accidentally have gotten on the olives themselves, but that possibility was for the jury to weigh. Their inference that it came from the Rochester company's shipment was certainly a permissible one and amply justified their special verdict as to adulteration and misbranding.

■ 2. It is contended that the samples put in evidence were not proved to be "representative" samples of the goods contained in each shipment. For example, the shipment to Market Wholesale Grocers consisted of 180 one-gallon cans, and the government restricted its proof to an analysis of the contents of only one can out of this shipment. However, witnesses testified to the appellant's method of manufacturing and said that as much as 8600 gallons were mixed at one time. If all the cans in each shipment to a single consignee were filled from the same "mix" obviously a sample taken from one can was representative of all the cans in that shipment. The appellant offered no evidence to prove that the contents of the cans in a single shipment came from different mixes. In the absence of such evidence, the jury was entitled to infer that all the oil in any one shipment (the largest of which consisted of only 180 gallons) did come from the same mix and, therefore, that the one gallon sample was representative of all the cans in the shipment. The contention that the burden of proof on this issue was erroneously placed on the appellant is not substantiated by the charge. The jury was instructed that be-

1. 21 U.S.C.A. § 342(b) (1) and (4).

2. The third charge was added by amendment to the libel.

3. 21 U.S.C.A. § 343(a).

fore they could make any finding favorable to the Government they must find that the sample involved was representative of the shipment. This plainly put the burden of proof on the libellant, and the later statement that they could take into consideration the claimant's failure to ask for additional samples can not fairly be construed as an instruction shifting the burden of proof, as the appellant now contends.

3. There was no error in denying appellant's counsel permission to make an opening statement to the jury. While there appears to be an absolute right to open, without express statutory provision therefor, in a few jurisdictions,[4] the rule is by no means universal.[5] We think that opening is merely a privilege to be granted or withheld depending on the circumstances of the individual case. Since an opening must not be argumentative, its utility lies chiefly in outlining the facts to be proven, especially where they are rather complex.[6] Here the issues to be tried were simple and had been clearly explained by the court upon the voir dire. Hence we see no abuse of discretion in the denial of counsel's request. Even if the denial were erroneous, the error would not appear to be prejudicial since counsel was accorded the right of summation.

Nor was there error in excluding the appellant's president from the court room. The appellant had requested that witnesses be excluded. The judge granted that request but, in effect, annexed to the grant the condition that Mr. Corrao, who was also to be a witness, should likewise be excluded. This was not, as appellant contends, the exclusion of a party; the corporation, not Mr. Corrao, was the claimant. One case has been found holding it was prejudicial error to exclude a corporation's president from the courtroom where he was charged with the duty of looking after the corporation's interest at the trial. Sherman v. Irving Merchandise Corp., Sup.App.

T., 26 N.Y.S.2d 645. That decision appears never to have been cited. As the matter is clearly procedural, we shall follow the rule of universal application in federal courts that the exclusion of witnesses from the courtroom lies within the discretion of the trial judge. See Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010; Oliver v. United States, 10 Cir., 121 F.2d 245, 250; Mitchell v. United States, 10 Cir., 126 F.2d 550. There was no abuse of discretion in attaching to the granting of appellant's motion to exclude witnesses the condition that the witness Corrao should also be excluded.

5. The next objection is denial of the claimant's motion for discovery. Before trial the claimant moved for an order directing the United States to furnish it with true and exact copies of each and every chemical test and analysis made by or for the United States on the samples of oil taken from the seized goods. The motion was based on Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The Government suggests that a condemnation proceeding under the Food, Drug and Cosmetic Act is not subject to the Civil Rules because 21 U.S.C.A. § 334(b) provides: " * * * the procedure in cases under this section shall conform, as nearly as may be, to the procedure in admiralty * * *" However, the Supreme Court has interpreted this as referring only to the initial procedure of seizure by process *in rem*. Four Hundred and Forty-Three Cans of Frozen Egg Product v. United States, 226 U.S. 172, 33 S.Ct. 50, 57 L.Ed. 174. It now appears well established that the Rules of Civil Procedure do apply to condemnation proceedings. Eureka Productions, Inc. v. Mulligan, 2 Cir., 108 F.2d 760; United States v. 88 Cases, etc., of Bireley's Orange Beverage, D.C.N.J., 5 F.R.D. 503; Cf. United States v. 720 Bottles, D.C.N.Y., 3 F.R.D. 466. And discovery need not be limited to analyses of fresh fruits and vege-

---

4. Curtis v. People, 72 Colo. 350, 211 P. 381; People v. McDowell, 284 Ill. 504, 120 N.E. 482.

5. Woods v. State, 154 Fla. 203, 17 So.2d 112; Henderson v. State, 158 Fla. 684,

29 So.2d 698; Stewart v. State, 245 Ala. 511, 17 So.2d 871.

6. 2 Bishop, New Criminal Procedure, Sec. 969 (2d Ed.)

tables under the better interpretation of 21 U.S.C.A. § 334(c).[7] United States v. 300 Cases, etc., of Black Raspberries, D.C.Ohio, 7 F.R.D. 36.

Rule 34 permits discovery only when "good cause therefor" is shown. Judge Hincks rightly ruled that no good cause for the discovery appeared, since the claimant had already made its own tests and analyses upon samples which had been supplied at its request. The motion for discovery preceded by a few days the amendment to the libel asserting adulteration by the addition of squalene. The claimant evidently anticipated that this charge would be made since its brief states that "its chemist had advised that there was no known method of determining whether squalene had been added, and consequently claimant moved for discovery." The claimant had no knowledge until the trial as to the anthranilic acid evidence. Objection was then made on the ground that there was no charge that such acid had been added. This was not a valid objection; testimony as to the presence of anthranilic acid was not offered to establish adulteration of the oil by the addition of this acid but to establish the addition of "marked" squalene. Had the claimant urged surprise in the introduction of the evidence dealing with anthranilic acid, he would have been entitled at most to a continuance, but no such request was made. See Murphy v. Overlakes Freight Corp., 2 Cir., 1949, 177 F.2d 342.

6. Calling Memmoli as a witness: After a shipment of the Rochester distiller's "marked" squalene had been traced into the hands of Memmoli, he was put on the stand by the libellant. When asked his occupation, he claimed his privilege against self-incrimination, disclosing that he was under federal indictment in New York. Thereafter a series of questions were put to him, culminating in the question whether he had sold any squalene to the claimant. As to

each question he claimed his privilege. The claimant then moved for a mistrial on the ground that the propounded questions were prejudicial to it.

In Wigmore on Evidence, 3d ed. § 2268, the learned author says: "The privilege is merely an *option of refusal,* not a prohibition of inquiry," and "it is universally conceded that the question may be put to the *witness on the stand.*" [Emphasis in original.] Nevertheless we are not prepared to say that it would not be ground for reversal if the party who called a witness connected with a challenged transaction knew, or had reasonable cause to know, before putting the witness on the stand that he would claim his privilege. See McClure v. State, 95 Tex.Cr.R. 53, 251 S.W. 1099; Rice v. State, 121 Tex.Cr.R. 68, 51 S.W.2d 364; cf. People v. Kynette, 15 Cal.2d 731, 104 P.2d 794, 802. However that may be, in the case at bar it had not been proven that the libellant knew or had reasonable cause to know that Memmoli would claim the privilege when he took the stand. Hence there was no error in calling him to the stand. After he had claimed the privilege, in response to the third question put to him, it was apparent that he would continue to claim it. Nevertheless, counsel for the Government propounded a series of increasingly pointed questions as to each of which the privilege could be, and was, claimed. Had this been done over the claimant's protest, it might have been error serious enough to require reversal. As to that, we need not say; for here, the claimant allowed the questions to go on without a whisper of objection and then moved for a mistrial. The victim of alleged prejudice cannot be allowed to nurse it along to the point of reversibility and then take advantage of a situation which by his silence he has helped to create. See Morrow v. United States, 7 Cir., 101 F.2d 654, 658, certiorari denied 307 U.S. 628, 59

7. Sec. 334(c): "Availability of samples or seized goods prior to trial. The court at any time after seizure up to a reasonable time before trial shall by order allow any party to a condemnation proceeding, his attorney or agent, to obtain a representative sample of the article seized, and as regards fresh fruits or fresh vegetables, a true copy of the analysis on which the proceeding is based and the identifying marks or numbers, if any, of the packages from which the samples analyzed were obtained."

S.Ct. 836, 83 L.Ed. 1511; Louisville R. Co. v. Masterson, 96 S.W. 534, 29 Ky.Law Rep. 829. The motion for a mistrial was properly denied. In his charge Judge Hincks handled the matter as well as may be done by admonition; he instructed the jury that Memmoli's "reluctance to incriminate himself may not be used to incriminate others * . * * The situation, then, is just as though Memmoli had never been called."

7. Exclusion of evidence: There was no error in excluding chemical reports as to the goods seized in Philadelphia. They were irrelevant without proof that the Philadelphia shipments came from the same "mix" as any of the seized Connecticut shipments.

8. The charge: The contention that the charge was biased and unfair is wholly unjustified. Nor was there error in refusing the request to charge that a mere preponderance of the evidence is insufficient to prove the charge. This is a civil proceeding in which the usual rule as to burden of proof prevails. United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494; Lilienthal's Tobacco v. United States, 97 U.S. 237, 266–267, 24 L.Ed. 901; Three Thousand Eight Hundred and Eighty Boxes of Opium v. United States, C.C.Cal., 23 F. 367, 396; cf. Van Camp Sea Food Co. v. United States, 3 Cir., 82 F.2d 365.

9. Claimant's remaining assignments of error do not require discussion; examination reveals them to be without merit.

Judgment affirmed.