**UNITED STATES**
v.
**CERTAIN PARCELS OF LAND
ETC. et al.**
Civ. No. 13204.

United States District Court,
S. D. California, Central Division.
Dec. 23, 1953.
Order Filed Feb. 8, 1954.

226

Laughlin E. Waters, U. S. Atty., Joseph F. McPherson, Sp. Asst. to the Atty. Gen., T. Keister Greer, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

L. A. Gibbons, Jerry H. Powell, Douglas C. Gregg, A. Andrew Hauk, Los An-

geles, Cal., for defendant Outer Harbor Dock & Wharf Co.

O'Melveny & Myers, Paul Fussell, Pierce Works, William W. Alsup, Los Angeles, Cal., for defendant Goodyear Tire & Rubber Co., Inc.

Roger Arnebergh, City Atty., Arthur W. Nordstrom, Asst. City Atty., C. N. Perkins, Deputy City Atty., Los Angeles, Cal., for defendant City of Los Angeles.

Wright, Wright, Green & Wright, Loyd Wright, Charles A. Loring, Los Angeles, Cal., for American Institute of Real Estate Appraisers of the Nat. Ass'n of Real Estate Boards, appearing amicus curiae.

MATHES, District Judge.

Plaintiff brought this action to condemn various interests in certain improved lands located at Los Angeles Harbor. Defendants have appeared to claim just compensation for their respective interests in the property taken, and now move for production, inspection and copying or photographing of documents pursuant to Rule 34. Fed.Rules Civ.Proc. Rule 34, 28 U.S.C.A. 281 (1950).

Specifically defendants ask that the Government as plaintiff be compelled to produce "all appraisals, appraisal reports and other documents containing written communications, facts, figures and photographs * * * relating to the * * * value" of the lands involved and "those certain improvements located on said lands, including the warehouse building * * *; which said * * * documents were submitted * * * to plaintiff by appraisers [named] * * * during the years 1949, 1950, 1951 and 1952."

Defendants also seek discovery of "letters, memoranda, reports, work sheets, notes, descriptions, specifications, calculations, maps, photographs and other documents sent and received by and between plaintiff United States of America and any or all of the defendants herein, and sent and received by and between plaintiff * * * and said appraisers * * * during the years 1949, 1950, 1951 and 1952 * * * relating to the * * * value of said lands, improvements and warehouse buildings * * * or the leasing, operation, maintenance, ownership or condemnation thereof."

An affidavit of counsel filed in support of the motion avers *inter alia:* "Said appraisal reports contain various facts and objects upon which * * * opinions and conclusions are based, including plans, specifications, photographs and descriptions of * * * other comparable properties, and the other documents * * * contain the same materials as well as communications relating to the same matters.

"Said appraisal reports were obtained by plaintiff * * * for the express purpose of determining the compensation which would have to be paid for the taking of the lands, improvements and buildings here in question."

The affidavit also sets forth an offer by defendants "to produce for the use of the government * * * copies of all appraisal reports obtained by defendants from their appraisal experts and to permit the inspection and copying or photographing thereof."

The affidavit concludes: "Discovery at this time and prior to trial of the said appraisal reports and other documents is necessary to enable the defendants to prepare adequately their case for trial and it will facilitate proof and aid in the progress of the trial and particularly in the cross-examination of the said appraisal experts who will testify for the government."

Rule 34 empowers the court, upon motion of any party "showing good cause therefor", to order any other party to the action who may have "in his possession, custody, or control" such objects "to produce and permit the inspection and copying or photographing * * of any designated documents, papers * * * letters, photographs * * *

or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) * * *." Fed.Rules Civ.Proc., Rule 34, 28 U.S.C.A. at 281; see Notes of Advisory Committee on Amendments to Rules, foll. Rule 34, id. at 281–282.

Within the scope of examination authorized by Rule 26(b) is "any matter, not privileged, which is relevant to the subject matter involved in the pending action * * * including the existence, description, nature, custody, condition and location of any * * * documents, or other tangible things and the identity and location of persons having knowledge of relevant facts." Rule 26 (b), id. at 168.

Moreover, the scope of the examination thus specifically authorized is broadened by the general provision of Rule 26(b) that: "It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." [Ibid.; see Notes of Advisory Committee on Amendments to Rules, foll. Rule 30, id. at 171–172.]

■ The documents sought to be discovered by means of the motion at bar are sufficiently "designated" as required by the rule, since the motion "specifies a reasonable period of time, and with reasonable particularity the subjects to which the documents called for relate." Brown v. United States, 1928, 276 U.S. 134, 143, 48 S.Ct. 288, 290, 72 L.Ed. 500; Consolidated Rendering Co. v. Vermont, 1908, 207 U.S. 541, 554, 28 S.Ct. 178, 52 L.Ed. 327; see Notes of Advisory Committee on Amendments to Rules, foll. Rule 34, 28 U.S.C.A. at 282.

The discovery authorized by Rule 34 extends only to matters "not privileged." The Government asserts that the matters as to which the defendants seek discovery are privileged from disclosure, both upon pre-trial and at the trial as well, because such matters constitute "confidential reports in Department of Justice files."

This claim is grounded upon the contention that the documents called for by the motion are to be regarded as "confidential" by virtue of regulations embodied in Order No. 3229 (Revised) [18 Fed.Reg. 1638 (1953)] issued by the Attorney General pursuant to 5 U.S.C.A. § 22, which provides that: "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department * * * and the custody, use, and preservation of the records, papers, and property appertaining to it." [R.S. § 161.]

Order No. 3229 (Revised) reads as follows:

"Office of the Attorney General
"Washington, D. C.
"January 13, 1953
"Order No. 3229 (Revised)
"Pursuant to authority vested in me by R.S. 161 (5 U.S.C.[A.] 22), it is hereby ordered:

"1. When a United States Attorney or any other officer or employee of the Department of Justice is served with a subpoena or order for the production or disclosure of materials or information contained in the files of the Department, the United States Attorney, or such other attorney as may be designated, will appear with the person upon whom the demand is made and inform the court or other issuing authority that such person is not authorized to produce or disclose the materials or information sought. Time will be requested within which to refer the subpoena or order to the Attorney General, and the United States Attorney or other attorney designated will refer the court to this order as published in the Federal Register. Advice as to such subpoena or order will be given immediately to the Attorney General

without awaiting court appearance.

"2. In the event the court declines to defer a ruling until instructions from the Attorney General have been received, or in the event the court rules adversely on a claim of privilege asserted under instructions of the Attorney General, the person upon whom such demand is made will, pursuant to this order, respectfully decline to produce the material or information sought. United States ex rel. Touhy v. Ragen, 340, U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417.

"3. Order No. 3229 (dated May 2, 1939) and Supplements 1, 2, 3, and 4 thereto (dated December 8, 1942), June 6, 1947, May 1, 1952, and August 20, 1952, respectively, heretofore in effect, are hereby revoked.

"James P. McGranery
"Attorney General"

Order No. 3229, as phrased prior to revision, see 11 Fed.Reg. 4920 (1939); 340 U.S. at pages 463–464, note 1, 71 S. Ct. 416, was held to be a valid exercise by the Attorney General of authority conferred upon him by 5 U.S.C.A. § 22; U. S. ex rel. Touhy v. Ragen, 1951, 340 U.S. 462, 468–469, 71 S.Ct. 416; and I assume for the purposes of this motion that the regulations set forth in present Order No. 3229 are likewise valid.

■ Such regulations are part of "that body of public records of which the courts take judicial notice". Caha v. United States, 1894, 152 U.S. 211, 222, 14 S.Ct. 513, 517, 38 L.Ed. 415; 44 U.S. C.A. § 307, and, when authorized by statute, "have the force of law." Ex parte Reed, 1879, 100 U.S. 13, 22, 25 L. Ed. 538; Boske v. Comingore, 1900, 177 U.S. 459, 469, 20 S.Ct. 701, 44 L.Ed. 846; Ex parte Sackett, 9 Cir., 1935, 74 F.2d 922.

■ To say that Order No. 3229 (Revised) is valid and has the force of law is to say no more than that it embodies "regulations, not inconsistent with law, for the government of his department" which the Attorney General is authorized by 5 U.S.C.A. § 22 to prescribe; specifically that "the Attorney General can validly withdraw from his subordinates the power to release department papers." U. S. ex rel. Touhy v. Ragen, supra, 340 U.S. at pages 467, 469, 470–473, 71 S.Ct. at page 419; Boske v. Comingore, supra, 177 U.S. at pages 469–470, 20 S.Ct. 701.

■ Order No. 3229 (Revised) only purports to bind the subordinates of the Attorney General in the Department of Justice; it does not and could not bind the courts. While "the Attorney General can validly withdraw from his subordinates the power to release department papers", he cannot by any regulation affect the power conferred upon the courts by Rule 34 to compel the production of department papers.

■ The assertion at bar, that to grant the pending motion would violate Order No. 3229 (Revised), falls short of a claim that the documents demanded are "privileged" within the meaning of Rule 34. For as the Court recently declared in United States v. Reynolds, 1953, 345 U.S. 1, 6, 73 S.Ct. 528, 531, "it should be clear that the term 'not privileged' as used in Rule 34, refers to 'privileges' as that term is understood in the law of evidence."

All that Order No. 3229 (Revised) means then is that the Attorney General has reserved to himself the decision as to whether or not some privilege recognized in the law of evidence shall be claimed by the Government against an order of court calling for production or disclosure from the files of the Department of Justice.

The foresight of the Attorney General in so doing is accented by the observations of Mr. Chief Justice Vinson in United States v. Reynolds, supra, that: "The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a pri-

vate party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." 345 U.S. at pages 7–8, 73 S.Ct. at page 532.

No formal claim of privilege has yet been lodged by the Attorney General, "after actual personal consideration by that officer", against production of the documents sought by the motion at bar.

Moreover there has been no intimation that information affecting national security, see Zimmerman v. Poindexter, D.C.Haw.1947, 74 F.Supp. 933 or military or other "secrets of state" are in any way involved. See: United States v. Reynolds, supra, 345 U.S. 1, 73 S.Ct. 528; Reynolds v. U. S., 3 Cir., 1951, 192 F.2d 987; Brauner v. U. S., D.C.E.D. Pa.1950, 10 F.R.D. 468; 8 Wigmore, Evidence, §§ 2367–2378a (3d ed. 1940).

Nor has there been any suggestion that disclosure of the requested matter would contravene the public policy which treats as confidential and privileged the identity of private citizens who furnish public officials with information relating to violations of law. See In re Quarles and Butler, 1895, 158 U.S. 532, 535–536, 15 S.Ct. 959, 39 L.Ed. 1080; Vogel v. Gruaz, 1884, 110 U.S. 311, 315–316, 4 S.Ct. 12, 28 L.Ed. 158; United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650, 652; cf. Sorrentino v. United States, 9 Cir., 1947, 163 F.2d 627; 8 Wigmore, Evidence, § 2374 (3d ed. 1940).

Nor is it claimed that the documents are confidential and hence privileged by reason of the attorney and client relationship. See Cal.Code Civ.Proc. § 1881 (2); City and County of San Francisco v. Superior Court, 1951, 37 Cal.2d 227, 237, 231 P.2d 26.

In short, the Government's claim of immunity under the Attorney General's regulations does not rest upon any privilege "established in the law of evidence." See United States v. Reynolds, supra, 345 U.S. at pages 6–7, 73 S.Ct. at page 531. The sole ground for the claim is that the documents are "confidential reports in Department of Justice files"; the Government's theory being, as stated before, that "reports in the Department of Justice files" are privileged because made confidential by Order No. 3229 (Revised).

Clearly there is no such privilege known to the law of evidence. The most then that can be said for the Government's position is that there is a general public policy against unnecessary disclosure of files of the executive branches of the Government. However, this policy may readily be outweighed by the public interest in disclosure when such files contain documents of evidentiary value in a court of justice. See Reynolds v. United States, 3 Cir., 1951, 192 F.2d 987, 995, reversed on other grounds, 1953, 345 U.S. 1, 73 S.Ct. 528.

The trial of any cause, criminal or civil, is an orderly quest for truth. The age-old policy of our common-law system of justice has been to insist that only the best evidence available be employed in that quest.

As Sir William Blackstone clearly expressed it, "the one general rule that runs through all the doctrine of trials is this, that the best evidence the nature of the case will admit of shall always be required, if possible to be had; but, if not possible, then the best evidence that can be had shall be allowed." [3 Bl. Comm. *368.]

Always qualifying this policy both to permit and to require the best available evidence, is the policy which protects privileged matter from public disclosure. As Mr. Justice Field expressed it in Totten v. United States, 1875, 92 U.S. 105, 23 L.Ed. 605: "It may be stated as a general principle, that public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the

law itself regards as confidential, and respecting which it will not allow the confidence to be violated. On this principle, suits cannot be maintained which would require a disclosure of the confidences of the confessional, or those between husband and wife, or of communications by a client to his counsel for professional advice, or of a patient to his physician for a similar purpose. Much greater reason exists for the application of the principle to cases of contract for secret service with the government, as the existence of a contract of that kind is itself a fact not to be disclosed." 92 U.S. at page 107.

In criminal cases, the public interest in compelling the best available evidence and the constitutional right of the accused to compel the production of all evidence "in his favor", U.S.Const. Amend. VI, may combine to outweigh any evidentiary privilege which the Government can assert. See United States v. Reynolds, supra, 345 U.S. at page 12, 73 S.Ct. 528; Scher v. United States, 1938, 305 U.S. 251, 59 S.Ct. 174, 83 L. Ed. 151; United States v. Burr, C.C. Va.1807, 25 Fed.Cas.No.14,692d, pp. 30, 35, 37; Id., 25 Fed.Cas.No. 14,694, pp. 187, 190–193; United States v. Coplon, 2 Cir., 1950, 185 F.2d 629, 638–639, certiorari denied, 1952, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688; United States v. Grayson, 2 Cir., 1948, 166 F.2d 863, 870; Sorrentino v. United States, supra, 153 F.2d 627; United States v. Beekman, 2 Cir., 1946, 155 F.2d 580; United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503; Wilson v. United States, 3 Cir., 1932, 59 F.2d 390, 392; United States v. Schneiderman, D.C.S.D.Cal. 1952, 106 F.Supp. 731, 735–736.

■ And even in civil cases the public interest in requiring the best available evidence demands that there be withheld from disclosure only such portion of a document as is essential to protection of the privilege.

■ The question of production of part of a document is one which *ex* *necessitate* must rest within the discretion of the trial court. See Crosby v. Pacific S. S. Lines, 9 Cir., 1943, 133 F.2d 470, 475, certiorari denied, 1943, 319 U. S. 752, 63 S.Ct. 1166, 87 L.Ed. 1706; Shores v. United States, 8 Cir., 1949, 174 F.2d 838, 844–845, 11 A.L.R.2d 635; United States v. Schiller, 2 Cir., 1941, 187 F.2d 572, 575–576; Wigmore, Evidence, § 2379 (3d ed. 1940).

■ If a document of evidentiary value to a party to a civil action is of such a nature that the privileged matter which it contains can be excised or by other means withheld from public disclosure without destroying the "best-evidence" character of the writing, the trial court will exercise discretionary power to the end that the competing interests of both Government and party may be reasonably satisfied. See United States v. Burr, supra, 25 Fed.Cas. at pages 190–193; Royal Exchange Assur. v. McGrath, D.C.S.D.N.Y.1952, 13 F.R.D. 150, 152–153; Evans v. United States, D.C.W.D.La.1950, 10 F.R.D. 255, 257–258; Henz v. United States, D.C.N.D. Cal.1949, 9 F.R.D. 291, 295; O'Neill v. United States, D.C.E.D.Pa.1948, 79 F. Supp. 827, 829, reversed on other grounds sub nom. Alltmont v. United States, 3 Cir., 1949, 174 F.2d 931.

■ The first step in this process of salvaging the best available evidence while protecting privileged matter from public disclosure is to order the document in question delivered to the Clerk under seal for inspection by the judge *in camera* to determine whether the document has sufficient possible evidentiary value in any event to warrant discovery by the party demanding its production. See United States v. De Normand, 2 Cir., 1945, 149 F.2d 622, 625, certiorari denied, 1945, 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454; United States v. Cohen, 2 Cir., 1945, 148 F.2d 94, certiorari denied, 1945, 325 U.S. 852, 65 S.Ct. 1087, 89 L.Ed. 1972; United States v. Ebeling, 2 Cir., 1944, 146 F.2d 254, 257; United

States v. Schneiderman, D.C.S.D.Cal. 1952, 104 F.Supp. 405.

In the imagined but as yet unarticulated case where the document or thing demanded is of such extraordinary character that "an examination of the evidence, even by the judge alone, in chambers" would "jeopardize the security which the privilege is meant to protect", there may be some imperative reason to abstain from compelling production even for *in camera* inspection. See United States v. Reynolds, supra, 345 U.S. at page 10, 73 S.Ct. 528. It is worth noting, however, that the rare case just mentioned was imagined in an action where the Government was not the moving party, but a defendant, and "only on terms to which it [as sovereign] has consented." 345 U.S. at page 12, 73 S. Ct. at page 534.

As Judge Maris forcefully explained in Reynolds v. United States, supra, 192 F.2d 987, "a claim of privilege against disclosing evidence relevant to the issues in a pending law suit involves a justiciable question, traditionally within the competence of the courts, which is to be determined in accordance with the appropriate rules of evidence, upon the submission of the documents in question to the judge for his examination *in camera*. Such examination must obviously be *ex parte* and *in camera* if the privilege is not to be lost in its assertion. But to hold that the head of an executive department of the Government in a suit to which the United States is a party may conclusively determine the Government's claim of privilege is to abdicate the judicial function and permit the executive branch of the Government to infringe the independent province of the judiciary as laid down by the Constitution." 192 F.2d at page 997.

Even in a case where the matter sought to be discovered from the Government is an object of rarest secrecy, it is a high probability that duplicates have been made by subordinates in the department. Thus the secret is known to one or more stenographers or file clerks or photographers or other craftsmen, and likely as not to others, including the United States Attorney, as well as his deputy who stands at the bar asserting the Government's privilege.

To borrow the apt rhetorical queries of Wigmore: "Shall every subordinate in the department have access to the secret, and not the presiding officer of justice? Cannot the constitutionally coordinate body of government share the confidence?" [8 Wigmore, Evidence, § 2379, p. 799 (3d ed. 1940). Compare 65 Harv.L.Rev. 1445 (1952).]

 Although the burden of establishing the value of the interests here sought to be condemned rests upon the defendant-property owners, see United States ex rel. Tennessee Valley Auth. v. Powelson, 1943, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390; Westchester County Park Comm. v. United States, 2 Cir., 1944, 143 F.2d 688, 692, certiorari denied, 1944, 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583; United States v. 711.57 Acres of Land, D.C.N.D.Cal. 1943, 51 F.Supp. 30, 33, the Government is nonetheless party plaintiff to this action.

 As plaintiff the Government is subject not only to orders of the court under Rule 34, but also to the provisions of Rule 41(b) that: "For failure of the plaintiff * * * to comply with these rules or any order of court, a defendant may move for dismissal of an action * * *." Fed.Rules Civ.Proc., Rule 41(b), 28 U.S.C.A. at page 379; United States v. Cotton Valley etc., D.C.W.D. La.1949, 9 F.R.D. 719, affirmed by an equally divided Court, 1950, 339 U.S. 940, 70 S.Ct. 793, 94 L.Ed. 1356; Royal Exchange Assur. v. McGrath, supra, 13 F.R.D. at pages 152–153; Evans v. United States, supra, 10 F.R.D. at pages 257–258; cf. United States v. Reynolds, supra, 345 U.S. at page 12, 73 S.Ct. 528.

Any order to produce which the court may make upon the pending motion will be directed against the United States,

and "its execution, if lawfully demandable, obviously [becomes] the duty of the [Attorney General], the head of that department of the Government of the United States having custody of the records in question, who has full authority under the statute and the regulations to make such production." Reynolds v. United States, supra, 192 F.2d at page 992. Accord, Durkin v. Pet Milk Co., D.C.W.D.Ark.1953, 14 F.R.D. 385, 391.

■ Once documents have been produced under a claim of privilege for *in camera* inspection by the court, "the court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect." United States v. Reynolds, supra, 345 U.S. at page 8, 73 S.Ct. at page 532.

All orders for discovery under Rule 34 being "subject to the provisions of Rule 30(b)," the court is specifically empowered to direct "that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or * * * make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." Fed. Rules Civ.Proc., Rules 30(b), 34, 28 U. S.C.A. at pages 213–214, 281; Remington-Rand v. Control Instrument Co., D.C., 7 F.R.D. 18, at page 20.

■ To borrow the words of Mr. Chief Justice Marshall, defendants' motion to inspect is addressed "to the discretion of the court * * * not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." United States v. Burr, supra, 25 Fed.Cas. at page 35. When invoked as a guide to judicial action, the Court said in Langnes v. Green, 1931, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520, discretion means "with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to

a just result." 282 U.S. at page 541, 51 S.Ct. at page 247. See Brown v. Allen, 1953, 344 U.S. 443, 496–497, 73 S.Ct. 397.

The motion at bar involves opinion evidence. The reports of the appraisers are said to include essentially two types of information: (1) opinions of the appraisers; and (2) statements as to the factual bases upon which the opinions are predicated.

In many cases a pre-trial exchange of the opinions of appraisers intended to be called by each side undoubtedly would tend to shorten cross-examination and otherwise expedite adjudication. [Cf. Hawkins, Discovery and Rule 34: What's So Wrong About Surprise? 39 A.B.A.J. 1075–1079 (1953).] Discovery of the reports in advance of trial in such cases would clearly be in furtherance of the declared policy of the rules "to secure the just, speedy, and inexpensive determination of every action." [Fed.Rules Civ.Proc., Rule 1, 28 U.S.C.A. at page 167.]

■ It must be noted, however, that the opinions are and will remain wholly incompetent and immaterial as evidence unless and until the appraisers are called as witnesses upon the trial and are shown to be experts qualified and prepared to give competent opinion testimony as to the value of the property in controversy. See Montana Ry. Co. v. Warren, 1890, 137 U.S. 348, 352–354, 11 S.Ct. 96, 34 L.Ed. 681; Kimball Laundry Co. v. United States, 8 Cir., 1948, 166 F.2d 856, 861–862, reversed, 1949, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765; United States v. 13.255.53 Acres of Land, 3 Cir., 1946, 158 F.2d 874, 876–877; Home Ins. Co. v. Tydal Co., 5 Cir., 1946, 152 F.2d 309; Washington Water Power Co. v. United States, 9 Cir., 1943, 135 F.2d 541; Welch v. Tenn. Valley Authority, 6 Cir., 1939, 108 F.2d 95, 101, certiorari denied, 1940, 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030.

And it hardly need be added that opinions are not as a rule "reasonably

calculated to lead to the discovery of admissible evidence." Fed.Rules Civ.Proc., Rules 26(b), 34, 28 U.S.C.A. at pages 168, 281; see United States v. 5 Cases etc., D.C.Conn.1949, 9 F.R.D. 81, affirmed, 2 Cir., 1950, 179 F.2d 519; Dipson Theatres v. Buffalo Theatres, D.C. W.D.N.Y.1948, 8 F.R.D. 313.

True, the opinions contained in the appraisers' reports may have evidentiary value as potential impeachment material, cf. United States v. Krulewitch, 2 Cir., 1944, 145 F.2d 76, 78–79, 156 A.L.R. 337, but *ex natura rei* only in rare instances could they aid pre-trial preparation of defendants' case other than in this negative way. See Hickman v. Taylor, 1947, 329 U.S. 495, 507–508, 511–513, 519, 67 S.Ct. 385, 91 L.Ed. 451; Carpenter v. Winn, 1911, 221 U.S. 533, 541, 31 S.Ct. 683, 55 L.Ed. 842; Alltmont v. United States, 3 Cir., 1950, 177 F.2d 971, 978, certiorari denied, 1950, 339 U.S. 967, 70 S.Ct. 999, 94 L.Ed. 1375; United States v. Rosenfeld, 2 Cir., 1932, 57 F.2d 74, 77, certiorari denied sub nom. Nachman v. United States, 1932, 286 U.S. 556, 52 S.Ct. 642, 76 L. Ed. 1290; United States v. Schneiderman, supra, 104 F.Supp. at page 410.

■ There is always the possibility that the expert may never be called to testify. But even when called, the opposing party has lost nothing by denial of pre-trial access to the opinion, since either an order under Rule 34 or a *subpoena duces tecum* is always available to compel production of the report at the trial. See Fed.Rules Civ.Proc., Rule 45, 28 U.S.C.A. 465 (1950); United States v. Smith, 9 Cir., 1941, 117 F.2d 911, 912; United States v. American Optical Co., D.C.S.D.N.Y.1942, 2 F.R.D. 534; 4 Moore's Federal Practice, §§ 34.02, 34.06 (2d ed. 1948).

There is yet another reason for reluctance to exercise discretion to compel pre-trial discovery of the opinions of the intended expert witnesses here.

The American Institute of Real Estate Appraisers of the National Association of Real Estate Boards, appearing by leave of court as *amicus curiae* in opposition to the pending motion, make the point that the granting of defendants' motion would "destroy the appraisers' property rights in products of the mind without compensation and therefore would constitute the taking of property without due process of law."

The argument in support of this contention can be summarized as follows: "The end product of the appraiser's work when reduced to writing is unique and original. It is a wholly new creation which may be of great value. The result of his efforts is a 'product of the mind' "; and each report here at issue is therefore the subject of "common-law copyright" in favor of the author. See Cal.Civ.Code § 980; Stanley v. C. B. S., 1950, 35 Cal.2d 653, 221 P.2d 73, 23 A. L.R.2d 216; Golding v. R. K. O., 1950, 35 Cal.2d 690, 221 P.2d 95.

Since "common-law copyright" arising under California law extends only to the right of first publication and upon such publication is destroyed, Cal.Civ.Code § 983(a), the argument continues, once production is ordered pursuant to the pending motion, "the common law property rights of [the appraisers] in such material will be forever lost."

■ Assuming without deciding that the appraisers' reports involved in the pending motion are now subject to "common-law copyright," it does not follow that an order for production would operate to destroy that right. Destruction of a "common-law copyright" in California is accomplished only by "publication of the composition by the owner thereof." [*Ibid.*] This implies voluntary publication. Stanley v. C. B. S., supra, 35 Cal.2d at page 661, 221 P.2d at page 78.

Since publication pursuant to order of court cannot be said to constitute voluntary publication by the owner within the meaning of § 983(a) of the California Civil Code, such an order could not have

the effect of depriving the appraisers of any property right they may now have under California law.

It is readily perceived, however, that while compulsory pre-trial discovery and publication might not in contemplation of law destroy any literary property right in the reports, the realizable value to the author of any presently undisclosed opinion might in fact be thereby destroyed.

█ Accordingly the court should exercise its discretion under Rule 34, Fed. Rules Civ.Proc., Rule 34, 28 U.S.C.A. at page 281; Reynolds v. United States, supra, 192 F.2d at pages 991–992, reversed on other grounds, 345 U.S. 1, 73 S.Ct. 528; William A. Meier Glass Co. v. Anchor Hocking Glass Corp., D.C.W.D.Pa. 1951, 11 F.R.D. 487, 490, so as to protect the value of any property right in the reports at issue which the appraisers may have, since such protection does not impede any legitimate objective of the parties at bar.

Hence defendants' motion will be denied insofar as pre-trial discovery is sought of the opinions of the appraisers. Bowdle v. Automobile Ins. Co., D.C.D. Del.1950, 11 F.R.D. 148, 151; Henz v. United States, supra, 9 F.R.D. at page 295; Lewis v. United Air Lines Transport Corp., D.C.W.D.Pa.1940, 32 F.Supp. 21, 23; cf. Royal Exchange Assur. v. McGrath, supra, 13 F.R.D. at page 153; Evans v. United States, supra, 10 F.R.D. at pages 257–258; Remington Rand v. Control Instrument Co., D.C.E.D.N.Y. 1947, 7 F.R.D. 18; Hercules Powder Co. v. Rohm & Haas Co., D.C.D.Del.1944, 3 F.R.D. 328, 330. Compare, Hickman v. Taylor, supra, 329 U.S. at page 519, 67 S.Ct. 385. See also: In re Croker's Will, 1951, 201 Misc. 264, 105 N.Y.S.2d 190; In re Draske's Will, 1936, 160 Misc. 587, 290 N.Y.S. 581; In re Bomar's Will, 1892, 27 Abb.N.C. 425, 18 N.Y.S. 214; In the Estate of Haywood, [1916] Prob. 47 (1915).

The question remains whether the factual portions of the appraisal reports are presently discoverable. Apart from the above-discussed claim of privilege under Order No. 3229 (Revised), it should be considered whether any of the matters sought are privileged as the "work product" of plaintiff's lawyers within the meaning of Hickman v. Taylor, supra, 329 U.S. 495, 67 S.Ct. 385.

There the Court said: "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. * * * Here is simply an attempt * * * to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. * * * Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney. * * * We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. * * * Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. * * * But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." 329 U.S. at pages 507,

510, 511–512, 67 S.Ct. at page 392; see also Note, 62 Harv.L.Rev. 269, 270 (1948).

 In the case at bar, the factual information contained in the documents sought to be discovered has been gathered for plaintiff by third persons under the supervision of plaintiff's attorneys. Insofar as factual material alone is involved then, the pending motion does not constitute "an attempt to secure the * * * mental impressions contained in the files and the mind of the attorney". Hickman v. Taylor, supra, 329 U.S. at page 509, 67 S.Ct. at page 392, nor does the supervision or acquisition by plaintiff's attorneys convert the result into "work product" of a lawyer. Cf. Shields v. Sobelman, D.C. E.D.Pa.1946, 64 F.Supp. 619. Hence no privilege appears to prevent defendants from pursuing the usual purpose of pretrial discovery—to advance the time of acquiring "mutual knowledge of all the relevant facts gathered by both parties". Hickman v. Taylor, supra, 329 U.S. at page 507, 67 S.Ct. at page 692.

Turning now to the question of whether "good cause" within the meaning of Rule 34 appears for requiring pre-trial discovery of the factual information under discussion. In G. & P. Amusement Co. v. Regent Theater Co., D.C.N.D.Ohio 1949, 9 F.R.D. 721, 724, Judge Jones observed that: "Good cause is not shown when the mover has the information sought or can obtain the documents or information therein through other methods than the rules of discovery. Conversely, when such information is available only in the documents which are to be produced, at least a partial showing of good cause has been made." See also: Dellameo v. Great Lakes S. C. Co., D.C. N.D.Ohio 1949, 9 F.R.D. 77.

Application of such a test at bar requires consideration of the reasonable probabilities as to what information is contained in the documents at issue which would be admissible at the trial, or "appears reasonably calculated to lead to the discovery of admissible evidence", Fed.Rules Civ.Proc., Rules 26(b), 34, 28 U.S.C.A. at pages 168, 281, and is not available to the moving party otherwise than through discovery proceedings.

In the appraisal reports in question one might reasonably expect to find information as to facts not disclosed by public record, relevant to transactions involving property comparable to that sought to be condemned. And discovery of such information "appears reasonably calculated to lead to the discovery" of evidence which would be admissible at the trial. See Kerr v. South Park Commissioners, 1886, 117 U.S. 379, 385–387, 6 S.Ct. 801, 29 L.Ed. 924; Kohl v. United States, 1875, 91 U.S. 367, 376, 23 L.Ed. 449; United States v. Ham, 8 Cir., 1951, 187 F.2d 265, 269–270; Franzen v. Chicago, M. & St. P. Ry. Co., 7 Cir., 1921, 278 F. 370; Pacific Live Stock Co. v. Warm Springs Irr. Dist., 9 Cir., 1921, 270 F. 555, 559; Laflin v. Chicago, W. & N. R. Co., C.C.E.D.Wis.1887, 33 F. 415, 423; Fed.Rules Civ.Proc., Rule 43(a), 28 U.S.C.A. at page 418; Green, The Admissibility of Evidence Under the Federal Rules, 55 Harv.L.Rev. 197 (1941). See also City of Los Angeles v. Hughes, 1928, 202 Cal. 731, 736, 262 P. 737, 739; Atchison, T. & S. F. Ry. Co. v. Southern Pac. Co., 1936, 13 Cal. App.2d 505, 512, 57 P.2d 575, 578–579 semble; cf. Bagdasarian v. Gragnon, 1948, 31 Cal.2d 744, 192 P.2d 935; Shoemaker v. Acker, 1897, 116 Cal. 239, 48 P. 62; Dean v. Hawes, 1916, 29 Cal.App. 689, 157 P. 558; 4 Nichols, Eminent Domain, § 12.311[3] (Sackman & Van Brunt, 3d ed. 1951); 2 Wigmore, Evidence, § 463 (3d ed. 1940).

It might, for example, lead to the discovery of evidence of transactions involving other comparable property which defendants' experts could cite on direct examination in giving reasons for their opinions as to value. See Atlantic Coast Line R. Co. v. United States, 5 Cir.,

1943, 132 F.2d 959, 963; Hannan v. United States, 1942, 76 U.S.App.D.C. 118, 131 F.2d 441, 443; Welch v. Tennessee Valley Authority, supra, 108 F.2d at pages 101–102; United States v. Certain Tracts of Land, D.C.S.D.Cal.1944, 57 F. Supp. 739; United States v. 13.40 Acres of Land, D.C.N.D.Cal.1944, 56 F.Supp. 535; United States v. 3969.59 Acres of Land, D.C.D.Idaho 1944, 56 F.Supp. 831, 838; Cal.Code Civ.Proc. § 1872; Heimann v. City of Los Angeles, 1947, 30 Cal.2d 746, 760–762, 185 P.2d 597, 605–607 (concurring opinion); City of Los Angeles v. Cole, 1946, 28 Cal.2d 509, 519–524, 170 P.2d 928, 934–937 (dissenting opinion); cf. Mutual Life Ins. Co. v. Savage, 5 Cir., 1929, 31 F.2d 35, 36; Oakland Water Front Co. v. LeRoy, 9 Cir., 1922, 282 F. 385, 387; Bagdasarian v. Gragnon, supra, 31 Cal.2d at page 756, 192 P.2d at page 942; Long Beach City High Sch. Dist. v. Stewart, 1947, 30 Cal.2d 763, 773, 185 P.2d 585, 590–591, 173 A.L.R. 249; Crusoe v. Clark, 1899, 127 Cal. 341, 59 P. 700. Compare e. g.: People v. La Macchia, Cal.Sup. 1953, 264 P.2d 15; Central Pac. R. Co. v. Pearson, 1868, 35 Cal. 247; City and County of San Francisco v. Tillman Estate Co., 1928, 205 Cal. 651, 656–657, 272 P. 585, 587.

Indeed such information might itself either afford basis for or tend to corroborate the opinion testimony of experts called by defendants as to the value of the property here in question. See City of Los Angeles v. Cole, supra, 28 Cal.2d 509, 170 P.2d 928; In re Estate of Ross, 1915, 171 Cal. 64, 151 P. 1138; Central Pac. R. Co. v. Pearson, supra, 35 Cal. 247; Thompson v. Stoakes, 1941, 46 Cal.App.2d 285, 115 P.2d 830. Compare: H. & H. Supply Co. v. United States, 10 Cir., 1952, 194 F.2d 553, 556; Hannan v. United States, supra, 131 F. 2d at page 443; Betts v. Southern California Fruit Exch., 1904, 144 Cal. 402, 77 P. 993; Young v. Bates Valve Bag Corp., 1942, 52 Cal.App.2d 86, 96–97, 125 P.2d 840, 846; Citron v. Fields, 1938, 30 Cal.App.2d 51, 85 P.2d 534, 538; Mc-

Elligott v. Freedland, 1934, 139 Cal.App. 143, 157–158, 33 P.2d 430, 436–437; Hammond Lumber Co. v. Los Angeles County, 1930, 104 Cal.App. 235, 248, 285 P. 896, 902; Glantz v. Freedman, 1929, 100 Cal.App. 611, 614, 280 P. 704, 705–706; City & County of Denver v. Quick, 108 Colo. 111, 113 P.2d 999, 1002, 134 A.L.R. 1120; 3 Wigmore, Evidence, § 719 (3d ed. 1940).

Lastly, the factual portions of the appraisal reports might afford a basis for cross-examination of plaintiff's appraisers if and when called. See Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369; Hickman v. Taylor, supra, 329 U.S. at page 511, 67 S.Ct. 385; People v. La Macchia, supra, 264 P.2d 15; In re Estate of Ross, supra, 171 Cal. 64, 151 P. 1138; Central Pac. R. Co. v. Pearson, supra, 35 Cal. 247; cf. Martin v. Capital Transit Co., 1948, 83 U.S.App. D.C. 239, 170 F.2d 811; United States v. Schneiderman, supra, 104 F.Supp. at page 410.

■ The potential evidentiary uses to which defendants might properly put information probably to be found in the documents sought by the pending motion and probably not available to defendants prior to trial, if at all, otherwise than through discovery proceedings, provide sufficient "good cause" for an order at this time granting the motion to the extent that the documents called for shall be first delivered to the Clerk for *in camera* inspection subject to further order of court. See United States v. Schneiderman, supra, 104 F.Supp. at pages 410–411; id., 106 F.Supp. at page 734.

■ To borrow the words of Mr. Justice Jackson, concurring in Hickman v. Taylor, supra: "It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." 329 U.S. at page 515, 67 S.Ct. at page 396.

Accordingly it is now ordered that plaintiff deliver to the Clerk, not later than twenty days prior to pre-trial hear-

ing, all documents and things described in defendants' pending "Motion for Production, Inspection and Copying or Photographing of Documents"; that accompanying each original document plaintiff may, if so advised, deliver one or more photo-copies with all figures fixing value opinion excised or otherwise deleted therefrom; that all or any such documents or things and copies thereof may, at the option of plaintiff, either be separately sealed and delivered to the Clerk under seal and the sealed containers marked for identification, or be first delivered to the Clerk and by him marked for identification and sealed.

It is further ordered that all such documents and things and copies thereof shall be kept by the Clerk under seal pending further order of court.

### FURTHER ORDER ON DEFENDANTS' MOTION FOR PRE-TRIAL PRODUCTION PURSUANT TO RULE 34

This cause having come before the court for hearing on defendants' motion for production, inspection and copying or photographing of documents prior to trial pursuant to Rule 34, Fed.Rules Civ. Proc. Rule 34, 28 U.S.C.A.; and the court having ordered, on December 23, 1953, that all documents and things described in defendants' "Motion for Production, Inspection and Copying or Photographing of Documents" be delivered for *in camera* inspection subject to further order of court; and the plaintiff having since submitted under seal, pursuant to the order of December 23, 1953, the documents hereinafter described, which have been subjected to *in camera* inspection and are now marked for identification as follows:

Plaintiff's Exhibit 1 for identification, described by plaintiff as "Factual Data Report" prepared by Thos. F. Mason and Roy C. Seeley, dated December 3, 1951;

Plaintiff's Exhibit 1-A for identification, described by plaintiff as Preliminary Report submitted by Joseph Shlichta

to Department of the Navy, dated February 14, 1951;

Plaintiff's Exhibit 1-B for identification, described by plaintiff as Appraisal Report submitted by Roy C. Seeley, as to Parcels 1 and 2, dated December 21, 1951;

Plaintiff's Exhibit 1-C for identification, described by plaintiff as Appraisal Report submitted by Thos. F. Mason, as to Parcels 1 and 2, dated January 26, 1952; and

Plaintiff's Exhibit 1-D for identification, described by plaintiff as Appraisal Report submitted by Thos. F. Mason, as to Parcel 3, dated March 10, 1952;.

And it appearing to the court that the above described documents comprising exhibits 1-A, 1-B, 1-C and 1-D for identification do not contain either competent evidence or any matter which "appears reasonably calculated to lead to the discovery of admissible evidence", Fed. Rules Civ.Proc. Rule 26(b), 28 U.S.C.A.;

And it appearing to the court that the documents comprising Exhibit 1 for identification do contain factual material which appears reasonably calculated to lead to the discovery of admissible evidence upon the trial of the cause;

It is ordered that plaintiff's Exhibit 1 for identification be held in the custody of the Clerk subject to further order of court, and that the defendants be permitted freely to inspect and copy or photograph all or any portion of that exhibit;

It is further ordered that plaintiff's Exhibits 1-A, 1-B, 1-C and 1-D for identification be separately sealed and kept secret under seal in the custody of the Clerk subject to further order of court; and

It is further ordered that, upon application of any defendant, any document or other exhibit withheld from inspection by such defendant shall be included under seal as part of any record on appeal in this cause, for *in camera* inspection by and subject to the further order of the

appellate court, in order to enable the appellate court to determine whether inspection has been erroneously withheld;

It is further ordered that the Clerk this day serve this order by United States mail upon all parties appearing in the cause.